OPINION OF THE COURT
Jones, J.
While the substantive aspects of a decision to terminate a shareholders’ derivative action against defendant corporate directors made by a committee of disinterested directors appointed by the corporation’s board of directors are beyond judicial inquiry under the business judgment doctrine, the court may inquire as to the disinterested independence of the *624 members of that committee and as to the appropriateness and sufficiency of the investigative procedures chosen and pursued by the committee. In this instance, however, no basis is shown to warrant either inquiry by the court. Accordingly we hold that it was error to reverse the lower court’s dismissal of the shareholders’ derivative action.
In the summer of 1975 the management of General Telephone & Electronics Corporation, in response to reports that numerous other multinational companies had made questionable payments to public officials or political parties in foreign countries, directed that an internal preliminary investigation be made to ascertain whether that corporation had engaged in similar transactions. On the basis of the report of this survey, received in October, 1975, management brought the issue to the attention of the corporation’s board of directors. At a meeting held on November 6 of that year the board referred the matter to the board’s audit committee. The audit committee retained as its special counsel the Washington, D. C., law firm of Wilmer, Cutler & Pickering which had not previously acted as counsel to the corporation. With the assistance of such special counsel and Arthur Andersen & Co., the corporation’s outside auditors, the audit committee engaged in an investigation into the corporation’s worldwide operations, focusing on whether, in the period January 1, 1971 to December 31, 1975, corporate funds had been (1) paid directly or indirectly to any political party or person or to any officer, employee, shareholder or director of any governmental or private customer, or (2) used to reimburse any officer of the corporation or other person for such payments.
On March 4, 1976 the audit committee released its report which was filed with the Securities and Exchange Commission and disclosed to the corporation’s shareholders in a proxy statement prior to the annual meeting of shareholders held in April, 1976. The audit committee reported that it had found evidence that in the period from 1971 to 1975 the corporation or its subsidiaries had made payments abroad and in the United States constituting bribes and kickbacks in amounts perhaps totaling more than 11 million dollars and that some of the individual defendant directors had been personally involved in certain of the transactions.[1]
*625 Almost immediately Auerbach, a shareholder in the corporation, instituted the present shareholders’ derivative action on behalf of the corporation against the corporation’s directors, Arthur Andersen & Co. and the corporation. The complaint alleged that in connection with the transactions reported by the audit committee defendants, present and former members of the corporation’s board of directors and Arthur Andersen & Co., are liable to the corporation for breach of their duties to the corporation and should be made to account for payments made in those transactions.[2]
On April 21, 1976 the board of directors of the corporation adopted a resolution creating a special litigation committee "for the purpose of establishing a point of contact between the Board of Directors and the Corporation’s General Counsel concerning the position to be taken by the Corporation in certain litigation involving shareholder derivative claims on behalf of the Corporation against certain of its directors and officers” and authorizing that committee "to take such steps from time to time as it deems necessary to pursue its objectives including the retention of special outside counsel.” The special committee comprised three disinterested directors who had joined the board after the challenged transactions had occurred. The board subsequently additionally vested in the committee "all of the authority of the Board of Directors to determine, on behalf of the Board, the position that the Corporation shall take with respect to the derivative claims alleged on its behalf’ in the present and similar shareholder derivative actions.
The special litigation committee reported under date of November 22, 1976. It found that defendant Arthur Andersen & Co. had conducted its examination of the corporation’s affairs in accordance with generally accepted auditing standards and in good faith and concluded that no proper interest of the corporation or its shareholders would be served by the continued assertion of a claim against it. The committee also concluded that none of the individual defendants had violated the New York State statutory standard of care, that none had profited personally or gained in any way, that the claims asserted in the present action are without merit, that if the *626 action were allowed to proceed the time and talents of the corporation’s senior management would be wasted on lengthy pretrial and trial proceedings, that litigation costs would be inordinately high in view of the unlikelihood of success, and that the continuing publicity could be damaging to the corporation’s business. The committee determined that it would not be in the best interests of the corporation for the present derivative action to proceed, and, exercising the authority delegated to it, directed the corporation’s general counsel to take that position in the present litigation as well as in pending comparable shareholders’ derivative actions.
On December 17, 1976 the corporation and the four individual defendants who had been served moved for an order pursuant to CPLR 3211 (subd [a], pars [3], [7]) dismissing the complaint or in the alternative for an order pursuant to CPLR 3211 (subd [c]) for summary judgment. On January 7, 1977 Arthur Andersen & Co. made a similar motion. On May 13, 1977 Supreme Court, Special Term, granted the motions of all defendants and dismissed the complaint on the merits.
When it appeared that plaintiff Auerbach had no intention of appealing from the determination of Special Term, on June 13, 1977 Stanley Wallenstein, as executor of the estate of Ida S. Wallenstein, a stockholder of the corporation, filed and served a "Notice of Appeal” from the order and judgment of Special Term. On July 11, 1977 defendants moved in the Appellate Division to dismiss the purported Wallenstein appeal on the ground that he was not an aggrieved party. Thereupon Wallenstein cross-moved for an order pursuant to CPLR 1012 to intervene in the present action, nunc pro tunc, for the purpose of appealing from the judgment of Special Term pursuant to his notice of appeal dated June 13, 1977. Wallenstein predicated his right to intervene and to appeal on the grounds that Ida S. Wallenstein had been a stockholder of the corporation continuously from 1959 until her death in 1976 and that her estate, of which Stanley Wallenstein is sole executor, had continuously owned the corporate shares since her death, that in January, 1977 Wallenstein had commenced a shareholders’ derivative action against the corporation, and that on May 24, 1977 the defendants in the Wallenstein action had moved for dismissal of that action on the ground that the order and judgment of Special Term in the present action was res judicata and resulted in collateral estoppel. On August 3, 1977 defendants’ motion to dismiss the appeal and Wallen *627 stein’s cross motion for intervention were denied with leave to renew on argument of the appeal.
 On August 7, 1978 the Appellate Division denied defendants’ motion to dismiss the appeal, granted Wallenstein’s cross motion for leave to intervene, and reversed the May 13, 1977 order of Special Term and denied defendants’ motions for summary judgment. On October 12, 1978 that court granted defendants’ motions for leave to appeal to our court. For the reasons stated below we now modify the order of the Appellate Division to the extent of reversing its reversal of the order of Special Term granting defendants summary judgment dismissing the complaint on the merits and reinstate the order of Special Term. We do not disturb those portions of the order at the Appellate Division which denied defendants’ motion to dismiss the Wallenstein appeal and granted the cross motion for leave to intervene.
Appellant Arthur Andersen & Co. poses the threshold question whether an error of law was committed by the Appellate Division in permitting intervention by Wallenstein and entertaining the appeal taken by him from Special Term’s dismissal of the complaint. Because Andersen’s challenge to the Appellate Division’s exercise of authority in Wallenstein’s favor, if successful, would dispose of the present appeal without reaching the merits of the attack on defendants’ conduct with respect to the derivative actions, we turn first to that aspect of the appeal and there find no error of law in the disposition by the court below.
As to the status of Wallenstein as an appellant and intervenor we agree with the analysis of Mr. Justice Hopkins and particularly his statements that in a stockholder’s derivative action, traditionally regarded as in the nature of a class action, the interests of the stockholder and the corporation are united and that "when a stockholder undertakes to sue on behalf of the corporation, his action concerns the other stockholders as well” (64 AD2d 98, 104). The extent of that concern with respect to the present Auerbach action on stockholder Wallenstein is tellingly demonstrated by the fact that defendants attempted by collateral estoppel to obtain a dismissal of the derivative action instituted by Wallenstein on the strength of Special Term’s dismissal of this suit by Auerbach. In view of the established rule that a dismissal on the merits of one derivative action is generally a bar to suits by other stockholders of the same corporation on the same cause of *628 action (Grant v Greene Cons. Copper Co., 169 App Div 206, 215-216, affd 223 NY 655), we have no difficulty in recognizing one of the stockholders, who is within the class for whose benefit a derivative action has been instituted, as a party aggrieved by whom a notice of appeal may be filed under CPLR 5511.
The applicable rule has been well stated by a leading authority on New York practice: "Although ordinarily one not a party to the proceeding below will not be aggrieved because he will not be bound by the determination, in some situations a nonparty may be adversely affected, as in stockholders’ suits * * * In most such cases the real question is one of proper representation; if the person’s interests are not being adequately represented, or for any other reason he should be heard, the matter should properly be raised below, as by a motion for intervention (CPLR 1012-1013). If he had notice of the proceedings below and did nothing, considerations of orderly procedure will usually dictate that his subsequent attempt to appeal from the resulting judgment be denied, though intervention may be allowed in the appellate court in a proper case” (7 Weinstein-Korn-Miller, NY Civ Prac, par 5511.04 [emphasis supplied]). It cannot be disputed that, absent Wallenstein, his interests would not have been adequately represented in the Appellate Division; Auerbach’s decision not to appeal would have meant that such interests would not have been represented at all!
Appellant Andersen argues that, under the principles quoted, Wallenstein’s failure to have sought intervention earlier at Special Term is fatal to his appeal and to his application to intervene made to the Appellate Division. However, under the circumstances of this case when it was not until plaintiff Auerbach’s decision not to appeal from the dismissal by Special Term that the inadequacy of Auerbach’s representation of Wallenstein became apparent, Wallenstein cannot be faulted for not theretofore having sought intervention and for serving a notice of appeal to the Appellate Division — time for which was limited and if not complied with would have precluded any procurement of appellate review of Special Term’s dismissal — then moving in the Appellate Division for permission to intervene to secure to himself the full panoply of rights which attach to a named party in an action. The Appellate Division was vested with all the power of Supreme Court to grant the motion for intervention, and in the circum *629 stances here present this was "a proper case” for the grant of such relief by the appellate court. (For a similar grant in the Court of Appeals see Soto v Lenscraft Opt. Corp. [Rayex], 7 NY2d 747.)
In reaching the conclusion we do we reject Andersen’s contention that the Appellate Division lacked power to permit intervention nunc pro tunc because that court lacked jurisdiction of the case by reason of Wallenstein’s lack of standing to serve and file a valid, timely notice of appeal. Because Wallenstein came within the ambit of a "party aggrieved” as that term is employed in CPLR 5511, no jurisdictional defect existed. The case of Matter of Benson Realty Corp. v Walsh (40 AD2d 592, mot for lv to app den 31 NY2d 645), relied on by appellant Andersen, is distinguishable; there no notice of appeal had been filed within the period mandated by statute. Also without relevance is the reference tendered on oral argument to legislative intent reflected in the alteration made in CPLR 5511 from its predecessor statute (Civ Prac Act, § 557), with respect to the right of a substituted party to file notice of appeal. No substitution is involved in the present case; Wallenstein’s application was one for intervention as a coplaintiff with Auerbach, not as a successor replacement for him. Insofar as the Appellate Division admitted him to the litigation and entertained the appeal, notice of which was filed by him, there was no error.
As all parties and both courts below recognize, the disposition of this case on the merits turns on the proper application of the business judgment doctrine, in particular to the decision of a specially appointed committee of disinterested directors acting on behalf of the board to terminate a shareholders’ derivative action. That doctrine bars judicial inquiry into actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes. "Questions of policy of management, expediency of contracts or action, adequacy of consideration, lawful appropriation of corporate funds to advance corporate interests, are left solely to their honest and unselfish decision, for their powers therein are without limitation and free from restraint, and the exercise of them for the common and general interests of the corporation may not be questioned, although the results show that what they did was unwise or inexpedient.” (Pollitz v Wabash R. R. Co., 207 NY 113, 124.)
*630 In this instance our inquiry, to the limited extent to which it may be pursued, has a two-tiered aspect. The complaint initially asserted liability on the part of defendants based on the payments made to foreign governmental customers and privately owned customers, some unspecified portions of which were allegedly passed on to officials of the customers, i.e., the focus was on first-tier bribes and kickbacks. Then subsequent to the service of the complaint there came the report of a special litigation committee, particularly appointed by the corporation’s board of directors to consider the merits of the present and similar shareholders’ derivative actions, and its determination that it would not be in the best interests of the corporation to press claims against defendants based on their possible first-tier liability. The motions for summary judgment were predicated principally on the report and determination of the special litigation committee and on the contention that this second-tier corporate action insulated the first-tier transactions from judicial inquiry and was itself subject to the shelter of the business judgment doctrine. The disposition at Special Term was predicated on this analysis; its decision focused on the actions of the special litigation committee, and the motions for summary judgment were granted on the ground that the business judgment doctrine precluded the courts from going back of the decision of the special litigation committee on behalf of the corporation not to pursue the claims alleged in the complaint. Similarly the reversal at the Appellate Division was based on that court’s perception of the proper application of the business judgment rule to the actions and determination of the special litigation committee. We proceed on the same analysis, concluding, however, on the record before us, at variance with the Appellate Division, that the determination of the special litigation committee forecloses further judicial inquiry in this case.
It appears to us that the business judgment doctrine, at least in part, is grounded in the prudent recognition that courts are ill equipped and infrequently called on to evaluate what are and must be essentially business judgments. The authority and responsibilities vested in corporate directors both by statute and decisional law proceed on the assumption that inescapably there can be no available objective standard by which the correctness of every corporate decision may be measured, by the courts or otherwise. Even if that were not the case, by definition the responsibility for business judg *631 merits must rest with the corporate directors; their individual capabilities and experience peculiarly qualify them for the discharge of that responsibility. Thus, absent evidence of bad faith or fraud (of which there is none here) the courts must and properly should respect their determinations.
Derivative claims against corporate directors belong to the corporation itself. As with other questions of corporate policy and management, the decision whether and to what extent to explore and prosecute such claims lies within the judgment and control of the corporation’s board of directors. Necessarily such decision must be predicated on the weighing and balancing of a variety of disparate considerations to reach a considered conclusion as to what course of action or inaction is best calculated to protect and advance the interests of the corporation. This is the essence of the responsibility and role of the board of directors, and courts may not intrude to interfere.
In the present case we confront a special instance of the application of the business judgment rule and inquire whether it applies in its full vigor to shield from judicial scrutiny the decision of a three-person minority committee of the board acting on behalf of the full board not to prosecute a shareholder’s derivative action. The record in this case reveals that the board is a 15-member board, and that the derivative suit was brought against four of the directors. Nothing suggests that any of the other directors participated in any of the challenged first-tier transactions. Indeed the report of the audit committee on which the complaint is based specifically found that no other directors had any prior knowledge of or were in any way involved in any of these transactions. Other directors had, however, been members of the board in the period during which the transactions occurred. Each of the three director members of the special litigation committee joined the board thereafter.
The business judgment rule does not foreclose inquiry by the courts into the disinterested independence of those members of the board chosen by it to make the corporate decision on its behalf — here the members of the special litigation committee. Indeed the rule shields the deliberations and conclusions of the chosen representatives of the board only if they possess a disinterested independence and do not stand in a dual relation which prevents an unprejudicial exercise of judgment. (Cf. Koral v Savory, Inc., 276 NY 215.)
We examine then the proof submitted by defendants. It is *632 not disputed that the members of the special litigation committee were not members of the corporation’s board of directors at the time of the first-tier transactions in question. Howard Blauvelt, chairman of the board of Continental Oil Company, had been elected to the corporation’s board of directors on October 9, 1975. Dr. John T. Dunlop, Lamont University professor at the Graduate School of Business Administration of Harvard University had been elected to the board on April 21, 1976. James R Barker, chairman of the board and chief executive officer of Moore McCormack Resources, Inc., was added as the third member of the committee when he was elected to the board on July 19, 1976. None of the three had had any prior affiliation with the corporation. Notwithstanding the vigorous and imaginative hypothesizing and innuendo of counsel there is nothing in this record to raise a triable issue of fact as to the independence and disinterested status of these three directors.
The contention of Wallenstein that any committee authorized by the board of which defendant directors were members must be held to be legally infirm and may not be delegated power to terminate a derivative action must be rejected. In the very nature of the corporate organization it was only the existing board of directors which had authority on behalf of the corporation to direct the investigation and to assure the co-operation of corporate employees, and it is only that same board by its own action — or as here pursuant to authority duly delegated by it — which had authority to decide whether to prosecute the claims against defendant directors. The board in this instance, with slight adaptation, followed prudent practice in observing the general policy that when individual members of a board of directors prove to have personal interests which may conflict with the interests of the corporation, such interested directors must be excluded while the remaining members of the board proceed to consideration and action. (Cf. Business Corporation Law, § 713, which contemplates such situations and provides that the interested directors may nonetheless be included in the quorum count.) Courts have consistently held that the business judgment rule applies where some directors are charged with wrongdoing, so long as the remaining directors making the decision are disinterested and independent. (Swanson v Traer, 249 F2d 854, 858-859; Gall v Exxon Corp., 418 F Supp 508, supplemented 75 Civ 3582 [US Dist Ct, SDNY, Jan. 17, 1977]; Issner v Aldrich, *633 254 F Supp 696, 701-702; Republic Nat. Life Ins. Co. v Beasley, 73 FRD 658, 668-669; Gilbert v Curtiss-Wright Corp., 179 Misc 641, 645.)
To accept the assertions of the intervener and to disqualify the entire board would be to render the corporation powerless to make an effective business judgment with respect to prosecution of the derivative action. The possible risk of hesitancy on the part of the members of any committee, even if composed of outside, independent, disinterested directors, to investigate the activities of fellow members of the board where personal liability is at stake is an inherent, inescapable, given aspect of the corporation’s predicament. To assign responsibility of the dimension here involved to individuals wholly separate and apart from the board of directors would, except in the most extraordinary circumstances, itself be an act of default and breach of the nondelegable fiduciary duty owed by the members of the board to the corporation and to its shareholders, employees and creditors. For the courts to preside over such determinations would similarly work an ouster of the board’s fundamental responsibility and authority for corporate management.
We turn then to the action of the special litigation committee itself which comprised two components. First, there was the selection of procedures appropriate to the pursuit of its charge, and second, there was the ultimate substantive decision, predicated on the procedures chosen and the data produced thereby, not to pursue the claims advanced in the shareholders’ derivative actions. The latter, substantive decision falls squarely within the embrace of the business judgment doctrine, involving as it did the weighing and balancing of legal, ethical, commercial, promotional, public relations, fiscal and other factors familiar to the resolution of many if not most corporate problems. To this extent the conclusion reached by the special litigation committee is outside the scope of our review. Thus, the courts cannot inquire as to which factors were considered by that committee or the relative weight accorded them in reaching that substantive decision — "the reasons for the payments, the advantages or disadvantages accruing to the corporation by reason of the transactions, the extent of the participation or profit by the respondent directors and the loss, if any, of public confidence in the corporation which might be incurred” (64 AD2d, at p 107). Inquiry into such matters would go to the very core of the *634 business judgment made by the committee. To permit judicial probing of such issues would be to emasculate the business judgment doctrine as applied to the actions and determinations of the special litigation committee. Its substantive evaluation of the problems posed and its judgment in their resolution are beyond our reach.
As to the other component of the committee’s activities, however, the situation is different, and here we agree with the Appellate Division. As to the methodologies and procedures best suited to the conduct of an investigation of facts and the determination of legal liability, the courts are well equipped by long and continuing experience and practice to make determinations. In fact they are better qualified in this regard than are corporate directors in general. Nor do the determinations to be made in the adoption of procedures partake of the nuances or special perceptions or comprehensions of business judgment or corporate activities or interests. The question is solely how appropriately to set about to gather the pertinent data.
While the court may properly inquire as to the adequacy and appropriateness of the committee’s investigative procedures and methodologies, it may not under the guise of consideration of such factors trespass in the domain of business judgment. At the same time those responsible for the procedures by which the business judgment is reached may reasonably be required to show that they have pursued their chosen investigative methods in good faith. What evidentiary proof may be required to this end will, of course, depend on the nature of the particular investigation, and the proper reach of disclosure at the instance of the shareholders will in turn relate inversely to the showing made by the corporate representatives themselves. The latter may be expected to show that the areas and subjects to be examined are reasonably complete and that there has been a good-faith pursuit of inquiry into such areas and subjects. What has been uncovered and the relative weight accorded in evaluating and balancing the several factors and considerations are beyond the scope of judicial concern. Proof, however, that the investigation has been so restricted in scope, so shallow in execution, or otherwise so pro forma or halfhearted as to constitute a pretext or sham, consistent with the principles underlying the application of the business judgment doctrine, would raise *635 questions of good faith or conceivably fraud which would never be shielded by that doctrine.
In addition to the issue of the disinterested independence of the special litigation committee, addressed above, the disposition of the present appeal turns, then, on whether on defendants’ motions for summary judgment predicated on the investigation and determination of the special litigation committee, Wallenstein by tender of evidentiary proof in admissible form has shown facts sufficient to require a trial of any material issue of fact as to the adequacy or appropriateness of the modus operandi of that committee or has demonstrated acceptable excuse for failure to make such tender. (Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065; CPLR 3212, subd [b].) We conclude that the requisite showing has not been made on this record.
At the outset we observe that Wallenstein, the intervener, must accept the record in the state in which he finds it at the time he was granted leave to intervene in the Appellate Division. No application for intervention was made prior thereto, nor did the application when made seek any relief other than the right to appeal from the order of Special Term. (Cf. Matter of Martin v Ronan, 47 NY2d 486). Thus, because plaintiff Auerbach had submitted none, the record in this case is devoid of any affidavits or documentary evidence in opposition to the motions for summary judgment.
On the submissions made by defendants in support of their motions, we do not find either insufficiency or infirmity as to the procedures and methodologies chosen and pursued by the special litigation committee. That committee promptly engaged eminent special counsel to guide its deliberations and to advise it. The committee reviewed the prior work of the audit committee, testing its completeness, accuracy and thoroughness by interviewing representatives of Wilmer, Cutler & Pickering, reviewing transcripts of the testimony of 10 corporate officers and employees before the Securities and Exchange Commission, and studying documents collected by and work papers of the Washington law firm. Individual interviews were conducted with the directors found to have participated in any way in the questioned payments, and with representatives of Arthur Andersen & Co. Questionnaires were sent to and answered by each of the corporation’s nonmanagement directors. At the conclusion of its investigation the special litigation committee sought and obtained *636 pertinent legal advice from its special counsel. The selection of appropriate investigative methods must always turn on the nature and characteristics of the particular subject being investigated, but we find nothing in this record that requires a trial of any material issue of fact concerning the sufficiency or appropriateness of the procedures chosen by this special litigation committee. Nor is there anything in this record to raise a triable issue of fact as to the good-faith pursuit of its examination by that committee.
Finally, there should be a word as to the contention advanced by the intervenor that summary judgment should at least be withheld until there has been opportunity for disclosure. We note preliminarily as a matter of procedure that there was no application at Special Term for any such relief nor is there in the record any opposing affidavit from which it appears that essential facts may exist which could be obtained by disclosure (CPLR 3212, subd [f]). It is also significant that neither in his brief nor on oral argument did Wallenstein identify any particulars as to which he desires discovery relating to the disinterestedness of the members of the special litigation committee or to the procedures followed by that committee. To speculate that something might be caught on a fishing expedition provides no basis to postpone decision on the summary judgment motions under the authority of CPLR 3212 (subd [fl). The disclosure proposed and described by Wallenstein on oral argument would go only to particulars as to the results of the committee’s investigation and work, the factors bearing on its substantive decision not to prosecute the derivative actions and the factual aspects of the underlying first-tier activities of defendants — all matters falling within the ambit of the business judgment doctrine and thus excluded from judicial scrutiny.
For the reasons stated the order of the Appellate Division should be modified, with costs to defendants, by reversing so much thereof as reversed the order of Supreme Court, and, as so modified, affirmed.

. The audit committee made a brief supplemental report under date of November 4, 1976, which also was filed with the Securities and Exchange Commission and was publicized through a press release.

. It appears that only 4 of the 13 named individual defendants, all present directors, have been served. By stipulation plaintiff agreed not to serve the other individual defendants and not to make them parties to this action unless and until their involvement in the actions alleged in the complaint appeared.