Harvey **GREENFIELD** and Robert Kelce, suing derivatively on behalf of Hamilton Oil Corporation, Plaintiffs–Appellants,

v.

**HAMILTON OIL CORPORATION,** Frederic C. Hamilton, Pehr G. Gyllenhammar, Ulf G. Linden, P. David Mantor, J.A. Precourt, John W.R. Sutcliffe, Peter Matthews, Anthony J.A. Bryan, Charles C. Gates, Robert A. Henderson, Robert M. Jenny, Howard M. Love, and Robert G. Stone, Jr., Defendants–Appellees.

No. 86CA0932.

Colorado Court of Appeals, Div. IV.

July 21, 1988.

Predovich, Ward & Banner, Walter Predovich, Lester L. Ward, Pueblo, Moye, Giles, O'Keefe, Vermeire & Gorrell, John E. Moye, Charles F. Luce, Jr., Bader & Villanueva, P.C., Gerald L. Bader, Jr., Jeffrey M. Villanueva, Denver, for plaintiffs-appellants.

Baker & Hostetler, James A. Clark, Thomas Overton, Denver, Shearman & Sterling, W. Foster Wollen, William J.F. Roll, III, New York City, for defendants-appellees Ulf G. Linden and Pehr G. Gyllenhammar.

Kirkland & Ellis, Bruce A. Featherstone, Scott R. Bauer, Mark E. Gebauer, Denver, for defendant-appellee Hamilton.

CRISWELL, Judge.

Harvey Greenfield and Robert Kelce, plaintiffs, appeal from the summary judgment dismissing their stockholders' derivative suit against the defendant, Hamilton Oil Corporation (HOC), and all of the members of its board of directors. The judgment of the trial court was apparently based upon the fact that a "special litigation committee" of HOC had investigated plaintiffs' claims and had determined that they lacked merit and that it would not be in HOC's best interest to pursue those claims. We reverse.

Plaintiffs' complaint contained two claims for relief, both of which were based upon the events surrounding the acquisition by Volvo North American Corporation (Volvo) of a block of the capital stock of HOC from its president, Frederic Hamilton, and other members of his family, and a subsequent tender offer made by Volvo to HOC's other stockholders. It was alleged that, as a result of Volvo's acquisition of Hamilton's stock, it became the owner of some 32% of the outstanding shares of HOC's common stock. Volvo agreed to pay $19.25 per share for Hamilton's stock, plus additional payments over a five-year period, based upon the net additions made to the proven oil and gas reserves of HOC during that period. In addition, the agreement between Volvo and Hamilton provided that Hamilton would have his HOC salary increased from $132,000 to $300,000 per year.

After Volvo's acquisition of the stock previously owned by Hamilton, Volvo made a tender offer to other stockholders to purchase an additional 4.7 million, or 16.9%, of the outstanding shares owned by other stockholders at a price of $19.50 per share. In considering this tender offer, HOC's board of directors unanimously voted to remain neutral upon the issue and notified the stockholders of that position. Volvo's offer was successful; as a result, it became the owner of about 49% of HOC's outstanding common stock.

Plaintiffs' first claim for relief asserted that the agreement between Volvo and Hamilton constituted a sale of HOC's assets and advantages, which Hamilton "siphoned off" for his personal gain, in violation of Hamilton's duty of loyalty to HOC. Plaintiffs sought an accounting from Hamilton for all amounts received by him as a result of his agreement with Volvo and a judgment against him and in favor of HOC for all of his profits under that agreement.

The second claim for relief was asserted against all of the members of HOC's board of directors. This claim was based upon allegations that, in taking a position of

neutrality concerning Volvo's offer, the members of the board had violated their duty of reasonable care by failing to apprise themselves of the value of the HOC stock, of the price that was paid to Hamilton for the stock sold by him, of the value of certain North Sea oil reserves owned by HOC, and of the existence of other willing purchasers of the HOC stock. Plaintiffs sought a judgment against the directors and in favor of HOC for any damages sustained by it as a result of the directors' action.

Defendants' motion to dismiss or for summary judgment was based upon two separate arguments. First, they asserted that plaintiffs' complaint failed to describe either the efforts they had made to obtain action from the board of directors, or from the stockholders, or the reasons for not making any demand upon them, as required by C.R.C.P. 23.1. Second, defendants demonstrated that the question of the advisability of HOC's commencement of litigation, based upon the claims asserted by plaintiffs, had been investigated by a special litigation committee (SLC), composed of 2 "outside" directors, who had recommended to the entire board that, because the claims lacked merit, it would not be in HOC's best interest to pursue these claims, and that the board had accepted the SLC's recommendation. They argued that, under these circumstances, HOC was entitled to a dismissal of the claims asserted by plaintiffs.

Without adopting any findings or conclusions, and without providing any explanation for its action, the trial court granted defendants' motion and dismissed both of plaintiffs' claims.

## I.

Plaintiffs first contend that the allegation of their complaint substantially complied with the requirements of C.R.C.P. 23.1. We agree.

C.R.C.P. 23.1 requires that in a stockholder derivative action the plaintiff must "allege with particularity" the efforts which have been made to have the corporation's directors, or if necessary its stock-

holders, undertake the action desired by him, or the reason for not making such an effort. However, if the officers or directors that have the authority to take the action demanded are the ones against whom the action is desired to be taken, "the allegations of wrongdoing themselves adequately establish the reasons for not making the effort to obtain corporate action." *Neusteter v. District Court,* 675 P.2d 1 (Colo.1984). *See also Bell v. Arnold,* 175 Colo. 277, 487 P.2d 545 (1971); *Van Schaack v. Phipps,* 38 Colo.App. 140, 558 P.2d 581 (1976).

■ In this case, the complaint specifically alleged that one of the plaintiffs had made a demand upon the board of directors to require Hamilton to pay to HOC the sums to be received by him as a "premium" under his agreement with Volvo, but that such demand was refused. With respect to plaintiffs' first claim, therefore, this allegation was sufficient not only to plead the requisite demand on behalf of the plaintiff who made that demand, but also to set forth the reasons why the other plaintiff was excused from making a second demand for the same action.

■ The second claim asserted that all of the members of the board of directors had violated the duty of due care owed by them to the corporation and its stockholders. *See* § 7–5–101(2), C.R.S. (1986 Repl. Vol. 3A). It is the board of directors that has the general authority to manage the business and affairs of the corporation. Section 7–5–101(1), C.R.S. (1986 Repl. Vol. 3A). Thus, absent proof that the corporation's articles or by-laws authorize some other official or group on behalf of HOC to institute suit against the directors, these allegations of wrongdoing were, themselves, sufficient to establish plaintiffs' reasons for not making any further demand. *Neusteter v. District Court, supra.*

## II.

Plaintiffs also argue that the claims asserted by them should not be dismissed based upon the investigation and recommendation of the SLC. Under the circum-

stances portrayed by this record, we also agree with this contention.

■■■ Any claim asserted by a plaintiff in a stockholder derivative action is a claim that is beneficially "owned" by the corporation itself. *Auerbach v. Bennett*, 47 N.Y. 2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979). Generally, it is the corporation, through its board of directors, that is entitled to determine whether it is in the best interests of the corporation to pursue any claim possessed by it. And, the courts will not, as a general rule, interfere with the directors in the exercise of their business judgment, provided they engage in a "reasonable and honest exercise of [that] judgment." *Rywalt v. Writer Corp.*, 34 Colo. App. 334, 526 P.2d 316 (1974).

When the claim involved is asserted against the directors themselves, however, their real or apparent interest in the matter makes it impossible, or at least inappropriate, for them to attempt to render a judgment that can be asserted to be either reasonable or honest with respect to the corporation's pursuit of that claim. In such a circumstance, at least one court has concluded that the directors are not only disqualified from reaching any substantive judgment upon the matter themselves, but that they are likewise disqualified from delegating that responsibility to any others chosen by them. *Miller v. Register & Tribune Syndicate, Inc.*, 336 N.W.2d 709 (Iowa 1983).

The courts of four other states, however, have concluded that, while the board itself cannot pass upon the question of the advisability of dismissing the derivative claim, it may delegate that responsibility to a committee of independent directors appointed for that purpose. If the impartiality of the members of the committee, the fairness of the procedures used by them, and, in some cases, the reasonableness of the committee's decision, have been demonstrated, committee decisions to dismiss derivative claims have been honored by the judiciary. *See Alford v. Shaw*, 320 N.C. 465, 358 S.E.2d 323 (1987); *Zapata Corp. v. Maldonado*, 430 A.2d 779 (Del.Supr.1981); *Rob-*

*erts v. Alabama Power Co.*, 404 So.2d 629 (Ala.1981); *Auerbach v. Bennett, supra.*

In addition, several federal courts of appeal, being called upon to apply state law in diversity cases, have concluded that other states would adopt a similar rule. *See Hasan v. Clevetrust Realty Investors*, 729 F.2d 372 (6th Cir.1984) (Massachusetts law); *In re General Tire & Rubber Co. Securities Litigation*, 726 F.2d 1075 (6th Cir.1984), *cert. denied*, 469 U.S. 858, 105 S.Ct. 187, 83 L.Ed.2d 120 (1984) (Ohio Law); *Joy v. North*, 692 F.2d 880 (2d Cir.1982), *cert. denied*, 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 930 (1983) (Connecticut law); *Lewis v. Anderson*, 615 F.2d 778 (9th Cir. 1979), *cert. denied*, 449 U.S. 869, 101 S.Ct. 206, 66 L.Ed.2d 89 (1980) (California law). Indeed, in *Bach v. National Western Life Insurance Co.*, 810 F.2d 509 (5th Cir.1987), the Court of Appeals for the Fifth Circuit predicted that the Colorado Supreme Court would adopt such a rule.

This jurisprudence has influenced the American Law Institute to consider the adoption of recommended standards to be met in order to have the courts accept such a committee's decision to dismiss a derivative claim. *See ALI, Principles of Corporate Governance: Analysis and Recommendations* §§ 7.08 and 7.10 (Tentative Draft No. 8, April 15, 1988).

In this case, it is undisputed that the board of directors, all of whose members were ultimately joined as defendants, designated two of the "outside" directors as a special committee to consider the validity of plaintiffs' charges and to recommend a course of action to the board. These two members, together with special counsel provided for them, undertook an investigation of plaintiffs' allegations and ultimately rendered a written report concluding that those charges lacked merit and that it would not be in the best interest of the corporation to pursue those claims. The committee, therefore, recommended that the claims be dismissed. The board adopted that recommendation.

The testimony of the members of the committee and of its counsel reveal it to be uncontroverted that the board did not del-

egate to the SLC the authority to make any final decision upon the litigation, but gave to it only the power to recommend a course of action to the board. Further, there is no indication in the record that, in acting upon the committee's recommendation, any member of the board abstained from voting upon the question.

Defendants assert that we should adopt the rule enunciated in *Auerbach v. Bennett, supra,* and hold that the claims asserted by plaintiffs can be dismissed by action of HOC in accordance with the SLC recommendation. In contrast, plaintiffs argue that Colorado should reject the special committee doctrine, but that, even if we adopt the rule contended for by defendants, the record here would not support the conclusion that the SLC was composed of independent, disinterested members or that its procedures were fair. Further, they argue that, even if some rule legitimatizing the special committee procedure is to be adopted, we should, nevertheless, cause any such committee's decision to be closely scrutinized and subjected to the court's own business judgment. *See Zapata v. Maldonado, supra; Roberts v. Alabama Power Co., supra; Alford v. Shaw, supra.*

■ We conclude, however, that it is unnecessary for us to determine the extent to which, if at all, Colorado law would authorize dismissal of a derivative corporate claim based upon the decision of an independent committee of disinterested directors. Such a determination is unnecessary because the procedure used by the defendants here would not provide a basis for dismissal of the plaintiffs' claims, even if some form of the special litigation committee rule were to be adopted.

As we have noted, the purpose to be served by any special litigation committee is to *substitute* its independent, and presumably objective, judgment for the judgment of the directors who have been accused of wrongdoing. Such a purpose cannot be fulfilled where, as here, the committee is given only the power of recommendation, while the power of ultimate decision is still retained in the hands of the accused wrongdoers.

This view is consistent with the standard presently under discussion by the American Law Institute which provides that, in order for a committee's conclusions to be entitled to judicial deference, the committee must be given the ultimate power of decision or, at the least, any recommendation made by the committee must be finally passed upon only by other disinterested members of the board of directors. ALI, *Principles of Corporate Governance: Analysis and Recommendations,* comment to § 7.10 at 171. *See also Swenson v. Thibaut,* 39 N.C.App. 77, 250 S.E.2d 279 (1978) (if ultimate decision to dismiss not made by committee, but by board that included accused wrongdoers, action is not, as a matter of law, undertaken in good faith).

Thus, even if we were to assume that Colorado would adopt the special litigation committee rule and that the members of the committee here met the tests for impartiality and fairness, defendants would still not have established a basis for dismissal of the claims asserted by plaintiffs. The decision to seek dismissal was not made by the SLC, but was a decision adopted by those persons who, as defendants in the litigation, had a vital personal interest in that decision. The efficacy of the corporate process, as well as the integrity of the judicial process, prevent defendants from seeking a dismissal on this basis.

### III.

■ The trial court in this case did not state its basis for granting summary judgment. Defendants contend, however, that the judgment of that court should be sustained because plaintiffs' complaint failed to allege any harm to the corporation as a result of the claims alleged and that the harm, if any, was sustained by HOC's stockholders, not by the corporation.

However, in neither their motion to dismiss nor their memorandum in support of the same did defendants make any mention of the absence of a corporate cause of action as a basis for dismissal. That issue was only fleetingly referred to by them at the time of oral argument.

Moreover, defendants vigorously opposed plaintiffs' discovery requests and ultimately succeeded in obtaining a court order that strictly limited plaintiffs' discovery to those materials used by the SLC in arriving at its recommendations. Thus, not only did plaintiffs have little notice of a third potential basis for dismissal, but, in addition, they were arguably denied the discovery necessary to show the existence of disputed facts relative to that issue.

Because this issue asserted here by defendants was not properly raised in a timely fashion before the trial court, it will not be considered on appeal. *See Christensen v. Hoover*, 643 P.2d 525 (Colo.1982).

The judgment of the trial court is reversed and the cause is remanded to that court with directions to reinstate plaintiffs' complaint and for further proceedings consistent with the views expressed herein.

PIERCE and JONES, JJ., concur.