■ Saverio C. Pugliese, Appellant, v Ben Mondello, Also Known as Ben R. Mondello, Jr., Respondent. [871 NYS2d 174]—

The plaintiff and the defendant allegedly were involved in several oral partnership agreements and/or joint ventures to buy, train, race, and sell race horses. The plaintiff alleges that pursuant to one oral partnership agreement, he paid the defendant $50,000 as his capital contribution to the partnership, and the defendant converted the money to his own use.

The defendant acknowledges that he received the $50,000 and placed it in his own account. He claims that the $50,000 was paid as compensation to him for a bad business decision made by the plaintiff with respect to a prior partnership and/or joint venture regarding a horse named Marco's Tale.

The defendant's counterclaim, bill of particulars, and supporting affidavits allege that the plaintiff, the defendant, and named horse trainers entered into a partnership or joint venture agreement to purchase, train, and race the horse named Marco's Tale, that the plaintiff caused Marco's Tale to be entered in a claiming race where the horse could be claimed and sold for $50,000, that Marco's Tale was claimed and sold for $50,000, and that Marco's Tale was in fact worth $250,000, causing the defendant, who had a one-fourth interest in the agreement, to sustain a loss of $62,500.

Although the defendant's counterclaim did not state the legal theory upon which it was based, in his brief to this Court the defendant characterized the counterclaim as sounding in breach of fiduciary duty. In support of his motion for summary judgment, the plaintiff submitted the defendant's deposition testimony, wherein the defendant acknowledged that Marco's Tale was entered in the claiming race by a representative of the horse's trainer, and that it is always the trainer of a horse who enters that horse in a claiming race. The defendant also testified at the deposition that the plaintiff directed the trainer to put Marco's Tale in the claiming race with the knowledge of the defendant, who spoke to the plaintiff "every day." According to the defendant, the plaintiff had the authority to do what he did, and the defendant had no authority to overrule that decision.

The defendant further testified that Marco's Tale had

sustained a cracked sesamoid early in 2004 and had to be withdrawn from a "select sale" for approximately $500,000. Accepting the defendant's account as true, there were legitimate business considerations for the plaintiff's alleged decision to place Marco's Tale in a $50,000 claiming race.

Pursuant to the business judgment rule, absent evidence of bad faith, fraud, self-dealing, or other misconduct, the courts must respect business judgments (*see Auerbach v Bennett,* 47 NY2d 619, 630 [1979]). A business decision is not subject to review under the business judgment rule if it is authorized, made in good faith, and in furtherance of the business's legitimate interests (*see Aguilera del Puerto v Port Royal Owner's Corp.,* 54 AD3d 977 [2008]; *Walden Woods Homeowners' Assn. v Friedman,* 36 AD3d 691 [2007]). In the instant case, the defendant acknowledged that the plaintiff had the authority to make the decision to place Marco's Tale in the claiming race, and that decision was apparently made in good faith, in furtherance of a legitimate business interest. There was no evidence of fraud, self-dealing, or other misconduct. Accordingly, the plaintiff was entitled to summary judgment dismissing the counterclaim.

Nevertheless, the plaintiff was not entitled to summary judgment in his favor for the return of the $50,000 demanded in the complaint. The defendant claimed at his deposition that the plaintiff made the payment as compensation to the defendant for what turned out to be a bad business decision. Although the plaintiff disputes this, there is no documentary evidence to support his assertions. Indeed, even the memo line of the plaintiff's $50,000 check payable to the defendant is blank. Accordingly, the plaintiff failed to establish his entitlement to judgment as a matter of law for return of the $50,000.

The plaintiff sustained his burden of demonstrating that the defendant's second affirmative defense, based upon the statute of frauds, was without merit by establishing that the alleged partnership agreement did not come within the statute of frauds (*see* General Obligations Law § 5-701). Indeed, the statute of frauds is generally inapplicable to an agreement to create a joint venture (*see Foster v Kovner,* 44 AD3d 23, 27 [2007]; *F.S. Intertrade Off. Prods. v Babina,* 199 AD2d 95, 96 [1993]) or partnership (*see Prince v O'Brien,* 234 AD2d 12 [1996]; *Rella v McMahon,* 169 AD2d 555 [1991]). Accordingly, the Supreme Court erred in denying that branch of the plaintiff's motion which was pursuant to CPLR 3211 (b) to dismiss the second affirmative defense.

In addition, the Supreme Court erred in denying that branch of the plaintiff's motion which was for a protective order with

respect to his 2004 and 2005 income tax returns. "[T]ax returns are generally not discoverable in the absence of a strong showing that the information is indispensable to the claim and cannot be obtained from other sources" (*Latture v Smith,* 304 AD2d 534, 536 [2003]; *see Benfeld v Fleming Props., LLC,* 44 AD3d 599 [2007]; *Altidor v State-Wide Ins. Co.,* 22 AD3d 435 [2005]). The defendant failed to meet this burden.

The plaintiff's remaining contentions are without merit or need not be addressed in light of our determination. Mastro, J.P., Florio, Eng and Chambers, JJ., concur. [*See* 2008 NY Slip Op 31061(U).]