Judith DAY and Bryan Barnes, individually and derivatively on behalf of HMC, Ltd., Third–Party Plaintiffs–Appellants,

and

Parachute Investment Holdings, LLC; Parachute Development Corporation; and Hayden C.W. Rader, Plaintiffs–Appellees,

v.

Michael P. STASCAVAGE and Chalmers I. Morse, Third–Party Defendants–Appellees.

No. 09CA2488.

Colorado Court of Appeals, Div. VI.

Nov. 10, 2010.

Hoskin, Farina & Kampf, P.C., Michael J. Russell, Barbara R. Butler, Andrew H. Teske, Grand Junction, CO, for Third–Party Plaintiffs–Appellants.

Garfield & Hecht, P.C., David H. McConaughy, Eric D. Musselman, Matthew L. Trinidad, Glenwood Springs, CO, for Plaintiffs–Appellees and Third–Party Defendants–Appellees.

Opinion by Judge CONNELLY.

This appeal involves a derivative lawsuit by limited partners challenging the sale of partnership property to a general partner at a price allegedly far below fair market value. Derivative lawsuits, whether filed by limited partners (as here) or by corporate shareholders, are two suits in one: the first against controlling officials to assert the entity's rights and the second on behalf of the entity. The entity may try to defeat the first suit and avoid the second by appointing a special litigation committee (SLC). Colorado courts do not review the substance of SLC business judgments but do ensure the judgments were reached independently after adequate investigation.

Because the general partners were involved in the sale to a fellow insider, a one-person SLC was appointed to evaluate the sale's fairness. After the SLC concluded the partnership should not pursue derivative claims challenging the sale, the court deferred to that determination and dismissed the lawsuit. We reverse because the SLC's investigation—which never sought independently to value the property at the time of the insider sale—was patently inadequate to reach an informed decision as to the merits of the derivative claims.

## I.  Background

The entity at issue is HMC, Ltd., a Colorado limited partnership formed to invest in real property in the Garfield County Town of Parachute. Investors hoped a referendum would allow gambling in the nearby City of Rifle. But the referendum failed. Some of the partnership's properties were sold in prior transactions that are not challenged.

Two limited partners, Judith Day and Bryan Barnes, brought the derivative claims against general partners Hayden C.W. Rader, Michael P. Stascavage, and Chalmers I. Morse. The claims involve the sale of the remaining partnership lots (the property) to general partner Rader. The contract was signed in November 2005, and the sale closed in September 2007. Rader paid $258,000 and also assumed obligations of $66,000.

The limited partners alleged that the sale price was far below the property's fair market value. Though Garfield County had assessed the property at $258,000, the limited partners alleged this tax assessment was formulaically discounted and based on outdated information. They alleged the property was worth well in excess of $1 million and perhaps as much as $4 million.

The limited partners asserted several derivative claims, including breaches of fiduciary duty and civil theft. Each verified claim alleged that the property had been sold to Rader for less than its fair market value. The limited partners alleged it would be "futile" to demand that the general partners pursue the claims, as "it is the wrongdoing of the general partners which is at issue."

The general partners responded by agreeing to a court order appointing an SLC. Ultimately, a Vail, Colorado, lawyer served as the SLC to decide whether the partnership should pursue the claims asserted in the derivative lawsuit. The lawyer's investigation spanned ten weeks, totaling some thirty

hours, and yielded a fourteen-page report recommending that the claims be dismissed.

Relying on the SLC report, defendants moved to dismiss the derivative claims. To respond to that motion, the limited partners were allowed to depose the SLC.

The court concluded the attorney SLC (1) was "independent and disinterested" and (2) followed "appropriate" investigative procedures. Accordingly, as the SLC had recommended, the court dismissed the limited partners' derivative claims. The court issued a C.R.C.P. 54(b) certification allowing immediate appeal.

## II. Discussion

### A. Overview of Derivative Actions

Derivative actions provide shareholders an equitable remedy "to protect the interests of the corporation from the misfeasance and malfeasance of 'faithless directors and managers.'" *Kamen v. Kemper Fin. Servs., Inc.,* 500 U.S. 90, 95, 111 S.Ct. 1711, 114 L.Ed.2d 152 (1991) (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 548, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)). This remedy, however, can itself be abused through "strike suits" filed only for their "nuisance value." *Cohen,* 337 U.S. at 548, 69 S.Ct. 1221. Colorado extends this remedy to limited partners, § 7–62–1001, C.R.S.2010, whose derivative rights are "much like those of shareholders." *Hirsch v. Jones Intercable, Inc.,* 984 P.2d 629, 631 (Colo.1999).

Derivative suits raise two distinct issues: "first, the plaintiff's right to sue on behalf of the [entity] and, second, the merits of the [entity] claim itself." *Ross v. Bernhard,* 396 U.S. 531, 534–35, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). The first is for the court to decide, while the second is for a jury if the claims are otherwise jury-triable. *Id.* at 538–39, 90 S.Ct. 733; *see also Hirsch,* 984 P.2d at 638 (directing *"the trial court* to determine" whether SLC "had the authority, independence, and good faith to entitle his decision to deference") (emphasis added).

There are prerequisites—including making a demand (or showing futility of a demand) on directors or general partners—to such actions. § 7–62–1001; *see also* C.R.C.P. 23.1 (shareholder derivative pleading requirements). The limited partners here indisputably complied with these procedures, and no one challenged their allegation regarding the futility of a demand.

The question in this case is whether the SLC's report required dismissal of the derivative claims. Under Colorado law, which follows the New York rather than Delaware approach, a "court may not second-guess [the SLC's] business judgment in deciding not to pursue the derivative litigation." *Hirsch,* 984 P.2d at 638 (following *Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 393 N.E.2d 994 (1979), rather than *Zapata Corp. v. Maldonado,* 430 A.2d 779 (Del. 1981)). But before deferring to the SLC, a court must determine that the SLC "was independent, and did employ reasonable procedures in his analysis." *Id.* As our supreme court has explained, "[u]nlike evaluation of a business judgment, trial courts are well equipped to evaluate the methodology and procedures best suited to conduct such an investigation." *Curtis v. Nevens,* 31 P.3d 146, 152 (Colo.2001).

### B. Burden of Persuasion

The parties disagree regarding who should bear the burden regarding the SLC's independence and investigation. Neither *Hirsch* nor *Curtis* addressed that issue. Most other courts have placed the burden of persuasion on those seeking dismissal of properly-pled derivative claims. *See In re UnitedHealth Group Inc. Shareholder Derivative Litigation,* 754 N.W.2d 544, 561 (Minn.2008); *In re PSE & G Shareholder Litigation,* 173 N.J. 258, 801 A.2d 295, 312 (2002); *Lewis v. Boyd,* 838 S.W.2d 215, 225 (Tenn.Ct.App.1992); *Houle v. Low,* 407 Mass. 810, 556 N.E.2d 51, 58 (1990); *Zapata,* 430 A.2d at 788.

Consistent with the majority view, we will impose the burden of persuasion on those seeking dismissal based on an SLC's report. Such a motion is not, strictly speaking, a summary judgment motion because it does not address the merits of the claims. *See Strougo ex rel. Brazil Fund, Inc. v. Padegs,* 27 F.Supp.2d 442, 448 (S.D.N.Y. 1998). Rather, it is "a hybrid motion" with a

standard "akin to summary judgment." *Sutherland v. Sutherland,* 958 A.2d 235, 238 (Del.Ch.), *reh'g denied,* 968 A.2d 1027, 1029 (Del.Ch.2008); *see also Auerbach,* 419 N.Y.S.2d 920, 393 N.E.2d at 1000–04 (applying a standard similar to summary judgment).

■ The moving party has the "ultimate burden of persuasion" in showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Continental Air Lines, Inc. v. Keenan,* 731 P.2d 708, 712 (Colo.1987) (summary judgment motion); *see also* 13 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Corporations* § 6019.50, at 250 (2004) (motion seeking dismissal based on SLC report must show "there is no genuine issue as to any material fact and that [movant] is entitled to dismiss the complaint as a matter of law"). Any factual disputes must be resolved by a court after an evidentiary hearing. *See Houle,* 556 N.E.2d at 59.

We do not agree with the general partners that *Auerbach* dictates placing the burden on the limited partners. They quote one court's comment that "*Auerbach* placed the burden of proof on the plaintiff to show 'facts sufficient to require a trial of any material issue of fact as to the adequacy or appropriateness of the modus operandi of [the] committee.'" *Strougo ex rel. Brazil Fund, Inc. v. Padegs,* 1 F.Supp.2d 276, 280 (S.D.N.Y.1998) (quoting 419 N.Y.S.2d 920, 393 N.E.2d at 1003). In context, however, this language from *Auerbach* does not address the burden of *persuasion* but simply involves the burden of *production* in response to a properly supported summary judgment motion. *Cf. Greenwood Trust Co. v. Conley,* 938 P.2d 1141, 1149 (Colo.1997) ("once the moving party has met its initial burden of production, the burden shifts to the nonmoving party to establish that there is a triable issue of fact").

■ As the Sixth Circuit has explained, "[n]either the *Auerbach* approach nor the *Zapata* approach allows a reviewing court to extend to the members of a special litigation committee the presumption of good faith and disinterestedness." *Hasan v. CleveTrust Realty Investors,* 729 F.2d 372, 376 (6th Cir.

1984). Because there is no such presumption, "[t]he corporation has the burden of proving independence, good faith, and a reasonable investigation." 13 Fletcher, *supra,* § 6019.50, at 250.

Finally, whatever *Auerbach* might suggest regarding burdens under New York law, we are not bound by that aspect of the case. *Hirsch* followed *Auerbach* instead of *Zapata* on one specific point: that a court will not second-guess an SLC's substantive judgments. *Hirsch,* 984 P.2d at 637–38. Our supreme court has never suggested that derivative plaintiffs bear the burden of persuasion in an SLC context.

### C. Standard of Appellate Review

■ The standard of appellate review of orders dismissing derivative claims depends on whether there was an evidentiary hearing. Where, as here, the trial court resolves the motion as a matter of law without an evidentiary hearing, appellate review is de novo. *Cf. West Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002) (de novo review of summary judgments); *see also City & County of Denver v. Crandall,* 161 P.3d 627, 633 (Colo.2007) (reviewing legal conclusions following evidentiary hearing de novo but accepting trial court's factual findings unless clearly erroneous).

### D. Review of the SLC's Investigation
#### 1. The SLC was independent.

■ The record shows that the SLC was independent of the general partners charged with the wrongdoing. Independence requires that the SLC be delegated "full and final authority" to act on the entity's behalf. *See Hirsch,* 984 P.2d at 638 (citing *Greenfield v. Hamilton Oil Corp.,* 760 P.2d 664, 668 (Colo.App.1988)). In addition, a court must ensure that independence was not "tainted by the SLC's allegiance to the director-defendants whose alleged misconduct gave rise to [the] claims." *Curtis,* 31 P.3d at 152.

The stipulated order of appointment gave the SLC the full "authority of the General Partners" in investigating the derivative claims. This case is different from *Greenfield,* where the "committee [was] given only

the power of recommendation, while the power of ultimate decision [was] still retained in the hands of the accused wrongdoers," 760 P.2d at 668. Though the order required the SLC to file a "report" with the court making "recommendations," this report apparently was intended to be the last word on the partnership's behalf. And we will construe the SLC report as a motion on behalf of the partnership to dismiss the derivative claims.

■ An SLC must also be free from a disqualifying conflict of interest. One court wrote that the "yardstick" for measuring an SLC's independence "must be 'like Caesar's wife'—'above reproach.'" *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart,* 845 A.2d 1040, 1055 (Del.2004); *see Hasan,* 729 F.2d at 379 (SLC not independent where a member had "several significant business relationships" with derivative defendants); *Houle,* 556 N.E.2d at 58 ("pressures on [SLC] to recommend dismissal of the action may have been strong" as "[h]er professional advancement appears to be dependent on the individual defendants").

The undisputed facts here showed the SLC attorney was independent and capable of impartially evaluating the partnership's best interests. He was not implicated in any wrongdoing and had no prior involvement with the partnership or principals involved in this case. There was no genuine factual issue that would require an evidentiary hearing regarding the SLC attorney's independence.

2. The investigation was inadequate.

■ The issue thus is whether the SLC's investigation was sufficiently thorough to support his conclusion. The undisputed facts of this case show the investigation was legally inadequate.

■■ The "cornerstone of a court's review of the SLC's procedures" is "the thoroughness of that committee's investigation." *Curtis,* 31 P.3d at 152. Relevant factors include "the length and scope of the investigation, the use of experts, the corporation or defendant's involvement, and the adequacy and reliability of information supplied to the committee." *Id.* Courts will not defer to an SLC whose "'investigation lacked the thor-

oughness which is necessary for a truly objective and meaningful recommendation.'" *Id.* (quoting *Hasan,* 729 F.2d at 379).

■ Here, the SLC was charged with evaluating the essential fairness of a self-dealing transaction between the partnership and a general partner. Under Colorado law, such a transaction is not categorically precluded, but it must be "demonstrate[d] that the transaction took place in good faith, was fair to the [entity], and was accompanied by full disclosure." *Kim v. Grover C. Coors Trust,* 179 P.3d 86, 90 (Colo.App.2007); *see also Jones v. Harris Assocs. L.P.,* — U.S. —, 130 S.Ct. 1418, 1427, 176 L.Ed.2d 265 (2010) (looking to whether "the transaction carries the earmarks of an arm's length bargain") (emphasis omitted; quoting *Pepper v. Litton,* 308 U.S. 295, 306–07, 60 S.Ct. 238, 84 L.Ed. 281 (1939)).

There is no dispute that the critical issue in evaluating whether pursuing the derivative claims was in the partnership's best interests was the value of the partnership property sold in the insider transaction. The derivative claims alleged that the general partners had sold the property to one of their own for much less than the property's fair market value. The SLC's report recognized that the focus should be on the transaction's "fairness" and "whether full value was received in the transaction." And the district court recognized "[t]he key factor" in evaluating fairness was "the price" at which the property was sold.

Despite spending some thirty hours (including general legal research) and writing a fourteen-page report (including general legal discussion), the SLC conducted no independent investigation into this critical point. In a case that cried out for an expert appraisal of the property's value, *cf. Curtis,* 31 P.3d at 152 (listing "the use of experts" as one factor bearing on adequacy of investigation), the SLC never sought an appraisal.

The district court wrote that the SLC "did not have the Property appraised because such an appraisal would reflect today's value, and not the value ... in November 2005" when two general partners agreed to sell it to the other. That reasoning ignores the

availability of "retrospective appraisals," which are necessary and appropriate in a variety of legal contexts. *See* Uniform Standards of Professional Appraisal Practice (US-PAP), *Statement on Appraisal Standards No. 3 (SMT–3)* (2010–11 ed.) ("Retrospective appraisals (effective date of the appraisal prior to the date of the report) may be required for property tax matters, estate or inheritance tax matters, condemnation proceedings, suits to recover damages, and similar situations."); *see generally Hice v. Lott,* 223 P.3d 139, 144 (Colo.App.2009) (noting that Colorado's "Division of Real Estate adopted USPAP as 'the generally accepted standards of professional appraisal practice'") (quoting regulation). Here, for example, the limited partners presented the SLC with a historical market analysis of allegedly comparable land. While the SLC was not required to accept that analysis, he could not decline to investigate the property's fair market value at the time of the insider sale.

The SLC simply accepted, without any independent scrutiny or any expert opinion, the general partners' reliance on the tax assessment. The limited partners, however, presented the SLC with information that this assessed value was significantly lower than the property's actual fair market value because it was outdated and based on a statutory formula artificially discounting the value of vacant land. Again, the SLC was not required to credit those contentions. But neither could he blithely accept the tax assessment as a fair appraisal of then-current market value.

The SLC admittedly made no effort to investigate whether the county's tax assessment accurately depicted the property's fair market value at the time of sale. He was unfamiliar with a possible statutory discounting formula, and he never contacted the Garfield County Assessor's Office to investigate this issue.

It is not our role to consider whether in fact the property was worth more than general partner Rader paid for it. But "courts are well equipped to evaluate the methodology and procedures best suited" to an SLC investigation. *Curtis,* 31 P.3d at 152. Plainly, the SLC's investigation was procedurally

inadequate to support any independent determination of the critical issue whether a general partner bought the property at a price that was fair to the partnership as a whole.

The SLC's final reason for recommending against pursuing the derivative claims was that a derivative suit challenging the sale to Rader would not be warranted in light of post-sale developments. In particular, the SLC noted that Wells Fargo Bank has now financed Rader's entity's development of the property.

This final reason suffers from the same procedural infirmity as the rest of the SLC report: it is not founded on independent investigation. The SLC specifically chose not to contact Wells Fargo (to avoid "stirring up the pot") and never investigated what had happened to the property after the partnership sold it to Rader. (The limited partners contend that such an investigation would have revealed that Rader resold one piece of the property just a few months later for about $500,000 more than he paid the partnership for the entire property.) The SLC's investigation was procedurally inadequate because it did not investigate the property's current status or whether it would be beneficial for the partnership to seek damages or even a remedy that might allow it to stand in Rader's shoes with respect to the property.

E. Consequences of an Inadequate SLC Investigation

Because the SLC did not employ reasonable investigative procedures, the SLC's conclusion that the partnership should not pursue the derivative claims is not entitled to deference. Accordingly, the limited partners' derivative suit may now proceed. 13 Fletcher, *supra,* § 6019.50, at 250 (result of deficient SLC investigation is that "[t]he shareholder-plaintiff may then resume immediate control of the litigation with a view toward prosecuting it to a conclusion regardless of the position taken by the committee appointed by the board"); *see also Janssen v. Best & Flanagan,* 662 N.W.2d 876, 889 (Minn.2003) ("the derivative suit proceeds on its merits" after a court concludes that an

SLC investigation was inadequate) (citing cases).

The Minnesota Supreme Court in *Janssen*, seeking to "strike a balance between allowing corporations to control their own destiny and permitting meritorious suits by shareholders," held that an entity is allowed just "one opportunity to exercise its business judgment." *Id.* at 890. We need not now decide whether to adopt such an invariable rule. If a stay is sought to allow further SLC investigation, the district court should balance the interests of the limited partners in expeditiously pursuing derivative claims against the interests of the partnership in exercising independent business judgment. *Cf. Curtis,* 31 P.3d at 154–55 (where SLC has not yet had opportunity to complete investigation, court considering stay request "must balance the need of an SLC to complete its investigation with the chilling effect a long stay can have on the derivative suit").

### III. Conclusion

The order dismissing the derivative claims is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge CARPARELLI and Judge FURMAN concur.