AMERICAN LEGACY FOUNDATION,
a Delaware non-profit corporation,
Plaintiff

v.

LORILLARD TOBACCO COMPANY, a
Delaware corporation, Defendant.

Civ.A. No. 19406.

Court of Chancery of Delaware,
New Castle County.

Submitted Sept. 13, 2005.
Decided Oct. 3, 2005.

David C. McBride, Martin S. Lessner, Christian Douglas Wright, Karen E. Keller, Young Conaway Stargatt & Taylor, L.L.P., Wilmington, DE; John Payton, David W. Ogden, Stuart F. Delery, Wilmer Cutler Pickering Hale and Dorr, L.L.P., Washington, DC; Ellen Vargyas, American Legacy Foundation, Washington, DC, for American Legacy Foundation.

Stephen E. Herrmann, Steven J. Fineman, Richards, Layton & Finger, P.A., Wilmington, DE; Jim W. Phillips, Jr., Robert J. King, III, Charles E. Coble, Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., Greensboro, NC, for Lorillard Tobacco Company.

## MEMORANDUM OPINION AND ORDER

LAMB, Vice Chancellor.

### I.

Lorillard Tobacco Company, the defendant and counterclaim plaintiff, has moved, pursuant to Court of Chancery Rule 59, for reargument of this court's August 22, 2005 Opinion granting summary judgment in favor of American Legacy Foundation ("ALF").[1] The motion raises three issues. First, Lorillard claims the court was mistaken in concluding that Lorillard had waived its claims as to all advertisements beyond the 20 examined specifically in the Opinion.[2] This is significant, Lorillard contends, because three of the remaining ads (*Casbah, Flavor Suggestions,* and *Hearse*) violate the prohibitions against personal attack and vilification found in the Master Settlement Agreement ("MSA"), as interpreted by the Opinion.[3] Second, Lorillard renews its argument that ALF's use of base fund monies to pay for advertising is either a breach of the MSA or a breach of the implied covenant of good faith and fair dealing, entitling Lorillard to a declaratory judgment to that effect.[4] Third, Lorillard argues the court misunderstood its objection to the *Dog Walker* ad, improperly examining only whether that ad is offensive because of its reference to "Big Tobacco" rather than to Lorillard itself.[5]

### II.

The facts of this case are discussed exhaustively in the Opinion. For the purposes of this motion, the court briefly describes the four challenged advertisements but otherwise incorporates by reference the Opinion.

### A. *Dog Walker*

In *Dog Walker,* a person telephones a tobacco company and a tobacco company

---

1. *American Legacy Foundation v. Lorillard Tobacco Company,* 886 A.2d 1, 2005 Del. Ch. Lexis 124.

2. Mot. for Reargument p. 5.

3. *Id.* at 6.

4. *Id.* at 8.

5. *Id.* at 9–10.

employee answers the phone "[g]ood afternoon, Lorillard." The caller then asks the employee if the company is interested in buying dog urine to acquire urea, "one of the chemicals that [tobacco companies] put in cigarettes."

## B. *Flavor Suggestions*

This ad involves a telephone call answered by a public relations employee at Philip Morris in which two unidentified people make fun of a purported tobacco industry claim that they add ammonia to cigarettes for flavor by suggesting ludicrous alternative flavors (such as "gas") to the Philip Morris employee on the other end of the phone.[6]

## C. *Casbah*

In this ad, an unidentified person calls the "Camel Seven Pleasures of the Casbah" hotline and proceeds to ask suggestive questions about the advertising campaign of that name, such as whether the "dazzling magic performances" promised by the ads had anything to do with the 400,000 deaths that the caller claims are caused by cigarettes annually.[7]

## D. *Hearse*

This ad involves another call to Philip Morris's beleaguered public relations staff. An unidentified caller excitedly explains that the company could expand its consumer base by placing its logo on hearses used at funerals, but is cut off before he can elaborate.[8]

---

6. Dep. Ex. 38D, Track 39.

7. *Id.* at 47.

8. *Id.* at 49.

## III.

■ A court may grant reargument or reconsideration when it appears that the court "overlooked or misapprehended the factual or the legal principles governing the disposition of the motion."[9] The standard is flexible, allowing the court to grant a motion for reargument or reconsideration if the "court has overlooked a decision or principle of law that would have a controlling effect or the court has misapprehended the law or the facts so that the outcome of the decision would be affected."[10]

■ In arguing that the court mistakenly believed the parties to be stipulating to limit the court's adjudication to the 20 specified ads (and thus not considering the ads *Casbah*, *Flavor Suggestions*, and *Hearse*), Lorillard notes that "from the outset, this lawsuit placed ALF's entire advertising program squarely at issue."[11] While that is an accurate description of how the parties conducted their discovery, it does not correctly reflect how the parties framed the issues for decision in their cross-motions for summary judgment, or how those issues were decided in the Opinion.

If the Opinion had addressed only ALF's motion for summary judgment, Lorillard would be correct in arguing that the status of the remaining ads would remain in dispute. ALF bore a heavy burden in this litigation of showing that *none* of its advertisements violated the MSA. Thus, its motion for summary judgment specifically recognized that even success on all 20 of those ads would not foreclose

---

9. *VGS, Inc. v. Castiel,* 2003 WL 1794210, at *1 (Del.Ch. Mar. 27, 2003).

10. *Id.*

11. Mot. for Reargument, 2.

Lorillard from continuing to litigate about any of the others.

Lorillard, however, did not content itself with defending ALF"s motion. Instead, it cross-moved seeking judgment on both of its principal counterclaims for breach of the MSA and on ALF"s principal claim for declaratory judgment. That motion and the briefs Lorillard filed in support thereof plainly put at issue Lorillard's claim that ALF"s entire advertising campaign (not merely the 20 ads) and its website violated the MSA.[12] Lorillard's burden on its motion, however, differed from ALF"s. While ALF had to show that none of the ads violated the MSA, Lorillard only had to prevail as to one, or at most a handful, of ads to prove its entitlement to substantial relief. In fact, Lorillard's briefs focus more or less exclusively on only five of the 20 ads addressed by ALF. This narrow focus rather clearly illustrates the limited nature of its burden and its understanding of it.

In addressing the cross-motions, the court first undertook to define the key contractual terms underlying the dispute- that is, "vilification" and "personal attack."[13] The court then examined the five ads Lorillard chose to brief in detail, and then examined the remaining 15 ads ad-

dressed in ALF's motion.[14] The court ruled that none of those 20 ads violated the MSA.

Because the court addressed Lorillard's motion for summary judgment in full and ruled against Lorillard, a motion for reargument is not a proper device for Lorillard now to advance arguments that it chose not to make about additional advertisements. There is a value in the conservation of judicial resources that ordinarily precludes this sort of piecemeal litigation of issues.[15] Lorillard had a full and fair opportunity to make any arguments it wanted to make about *Flavor Suggestions, Casbah,* and *Hearse.* It chose to make none. Instead, Lorillard chose to focus its briefs on what it, undoubtedly, thought were the most powerful examples of its case. The court fully and carefully considered and rejected all of the arguments advanced by Lorillard about ALF"s advertisements, and, thus, entered summary judgment in favor of ALF.

Lorillard's motion for reargument does not explain why it should now be allowed to make arguments it chose not to make in support of its motion for summary judgment. Moreover, Lorillard's motion for reargument even fails to explain how the three ads it now presents are in any way

---

12. A review of Lorillard's Opening Brief in Support of Its Motion for Summary Judgment confirms this understanding. At page 6 of that brief, Lorillard "respectfully submits that on the undisputed record before the Court, the following legal issues may be resolved at summary judgment without the necessity of trial: [1] A determination that the MSA's prohibition against personal attacks and vilification is unambiguous and that these terms carry their plain and ordinary meanings; [2] A determination that many of ALF's advertisements violate the MSA's prohibition against personal attacks and vilification...."

13. *Lorillard,* 886 A.2d at 26, 2005 Del. Ch. Lexis at *63–64 (defining "vilify"), 39, 2005

De. Ch. Lexis at *100–101 (defining "personal attack").

14. *Id.* at 31–33, 2005 Del. Ch. Lexis at *73–83 (examining ads for evidence of vilification), 41–43, 2005 Del. Ch. Lexis at *107–115 (examining ads for evidence of personal attack).

15. *In re ML/EQ Real Estate Pshp. Litig.,* 2000 WL 364188, *1, 2000 Del. Ch. Lexis 47, *2–3 ("[M]otions for reargument are not a mechanism for litigants to relitigate claims already considered by the court. Rule 59 relief is available to prevent injustice and will be granted only when the moving party demonstrates that the court's decision 'rested on a misunderstanding of a material fact or a misapplication of law' ").

different, or more objectionable, than the litany of ads already considered. They are simply more ads that Lorillard believes the court should examine, apparently at its leisure. The court declines to re-open issues it has already decided and, on this ground alone, concludes that the motion for reargument based on *Flavor Suggestions, Casbah,* and *Hearse* must be denied.

For the sake of completeness, however, the court will briefly address Lorillard's claims as to the three additional ads. After doing so, the court will address the issues raised by the motion for reargument about *Dog Walker.*

 *Casbah* mentions a brand (Camel) associated with R.J. Reynolds rather than identifying any specific corporation. While the Opinion held that corporations may be personally attacked, it stretches the definition of "personal" beyond the breaking point to argue that *brands* too, mere property of a corporation, may be so abused. The remaining two ads (*Hearse* and *Flavor Suggestions)* specifically mention Philip Morris, insofar as a representative of that company answers the telephone at the beginning of ALF's prank call. But even assuming that Lorillard has standing to challenge an insult to Philip Morris, neither ad contains any express criticism of the tobacco company at all. Both consist of nothing more than humorous, if somewhat cutting, suggestions for new business ideas. Obviously, Lorillard would prefer not to pay for advertisements in which jokesters try to deter potential smokers by highlighting the health effects of smoking. But nothing in those short radio ads reaches the level of severe criticism required by the Opinion.

 Lorillard next claims that the court ruled wrongly as to the ad *Dog Walker,* because it misunderstood Lorillard to be basing its "personal attack" claim on the use of "Big Tobacco" in the ad rather than the name of Lorillard itself. Indeed, Lorillard maintains, the broader claim made in its argument before the court includes the more specific claim. If it objects to "Big Tobacco," then surely it must have believed that the use of Lorillard's name in *Dog Walker* was a violation of the agreement that binds ALF.[16] As the court explained in the Opinion, however, because Lorillard's briefs did not discuss the fact that *Dog Walker* named Lorillard, the court specifically asked at argument about the nature of the claim being made. Lorillard's counsel clearly eschewed the argument that the mention of its name in *Dog Walker* was a violation of the MSA.[17] Rather than advance this argument, Lorillard swung for the fences by asking the court to rule that the real problem with the advertisement was its reference to "Big Tobacco." The court understood this far-reaching claim, and disagreed. In light of the deliberate choice made by Lorillard, it is not "axiomatic" that it contends that the mention of Lorillard or any other tobacco company by name constituted a violation of the MSA. Indeed, as Lorillard's counsel said at the argument, "that matters some but not much ... [b]ut as far as a violation of the MSA, I think not."[18] For this reason alone, the motion for reargument with respect to *Dog Walker* must be denied.

---

16. Mot. for Reargument, 14 ("It is axiomatic that Lorillard contends that the more specific reference to Lorillard used in the Dog Walker advertisement—as well as the advertisement's singling out of actual (and in one case) named Lorillard employees for ridicule—constitutes a 'personal attack' ").

17. Tr. of Hr'g on Cross Mot's for Summ. J., held May 10, 2005, at 107–08.

18. *Id.* at 108.

Nonetheless, for the sake of completeness, the court will address Lorillard's new arguments as to *Dog Walker* on the merits. Essentially, the defendants now argue that *Dog Walker* violates the MSA because it names Lorillard specifically, and because the ad's equation of dog urine with the chemical urea used in the manufacture of cigarettes constitutes a personal attack against Lorillard. As indicated in the Opinion, the court agrees with Lorillard that *Dog Walker* (as it relates to Lorillard) raises serious questions under the MSA. Having considered the parties' arguments fully, however, the court concludes that *Dog Walker* does not, on balance, violate the MSA's prohibition against either "personal attack" or "vilification." Although the advertisement is undoubtedly insulting in its invocation of "dog urine" as a potential source for urea, the offensiveness of any criticism of Lorillard is tempered by the fact that the advertisement's goal is to educate potential consumers, particularly youths, about the unappetizing range of ingredients included in all cigarettes.[19] *Dog Walker* does not insult Lorillard or its employees specifically, nor does it insinuate that Lorillard spices its own products with urea while other companies do not. If anything, the average listener is likely to feel sympathy for the customer service representative ambushed by ALF's operatives. The fact that urea is actually used in cigarettes further tips the delicately balanced scales in favor of ALF.[20] If ALF had falsely claimed that Lorillard put urea in its cigarettes, the line separating licit from illicit criticisms would have been crossed. But in the absence of evidence of falsehood, and given *Dog Walker's* primary target of tobacco products rather than any particular company or person, the court does not find in favor of Lorillard.

Finally, Lorillard claims that it is entitled to a declaration that ALF's use of base funds to pay for some advertising is either a violation of the MSA's terms or amounts to a violation of the duty of good faith and fair dealing inherent to all contracts. The court was clear on this issue in the Opinion. If none of the ads violate Section VI(h) of the agreement, any discussion of the base funding issue is moot.[21] Lorillard has not explained why the court's plain disposition of that issue reflects a misapprehension of facts or law of the kind required to grant its motion for reargument.[22]

## III.

For the reasons set forth above, the defendant's motion for reargument is DENIED. IT IS SO ORDERED.

---

19. Lorillard conceded in its motion for summary judgment that advertisements made to educate the public about tobacco rather than cast aspersions on tobacco companies were permissible under even Lorillard's own construction of the MSA. As Lorillard noted, an advertisement that "asserts that tobacco products contain urea does not violate the MSA's prohibition against personal attacks and vilification." Pl.'s Br. In Supp. Of its Mot. for Summ. J. 72.

20. *Lorillard,* 886 A.2d at 28, 2005 Del. Ch. Lexis at *68.

21. *Id.* at 45, 2005 Del. Ch. Lexis at *119.

22. *Doft & Co., et. al. v. Travelocity,* 2004 WL 1366994, 2004 Del. Ch. Lexis 84 (granting a motion for reargument where the court agreed with respondents that a different measure of future earnings was more appropriate in an appraisal proceeding); *Ollar v. Infectech, Inc.,* 2003 WL 22119555, 2003 Del. Ch. Lexis 95 (denying a motion for reargument where the plaintiff pointed to no material facts or pertinent principles of law that were misapplied, and alternatively was unable to allege new evidence under Rule 60(b)(2)).