**Martha S. SUTHERLAND, as Trustee of the Martha S. Sutherland Revocable trust dated August 18, 1976, Plaintiff,**

**v.**

**Perry H. SUTHERLAND, Todd L. Sutherland, and Mark B. Sutherland, Defendants,**

**and**

**Dardanelle Timber Co., Inc., and Sutherland Lumber Southwest, Inc., Nominal Defendants.**

**C.A. No. 2399–VCL.**

Court of Chancery of Delaware.

Submitted: May 19, 2008.
Decided: May 29, 2008.

Robert S. Saunders, Esquire, Skadden Arps Slate Meagher & Flom, LLP, Wilmington, for the Individual Defendants.

A. Gilchrist Sparks, III, Esquire, S. Mark Hurd, Esquire, Jay N. Moffitt, Esquire, Morris Nichols Arsht & Tunnell, LLP, Wilmington, for the Nominal Defendants.

## OPINION

LAMB, Vice Chancellor.

The nominal defendants, Dardanelle Timber Co., Inc. and its wholly owned subsidiary, Sutherland Lumber Southwest, Inc., move pursuant to Court of Chancery Rule 59(f) to reargue this court's May 5, 2008 denial of their motion to dismiss this derivative action based on the conclusions of a one-person special litigation committee ("SLC"). The companies argue that the court both misapplied the law and misapprehended material facts in reaching its decision. For the reasons stated below, the motion for reargument will be denied.

## I.

The standard applicable to a motion for reargument is well settled. To succeed, " 'the moving party [must] demonstrate that the Court's decision was predicated upon a misunderstanding of a material fact or a misapplication of the law.' "[1] Such motions "are not a mechanism for litigants to relitigate claims already considered by the court."[2] Rather, "Rule 59 relief is available to prevent injustice...."[3] Further, any actual misunderstanding or misapplication must be such that " 'the outcome of the decision would be affected.' "[4]

1. *Deloitte & Touche U.S.A., L.L.P. v. Lamela,* 2006 WL 345007, at *2 (Del.Ch. Feb. 7, 2006) (quoting *Goldman v. Pogo.com, Inc.,* 2002 WL 1824910, at *1 (Del.Ch. July 16, 2002)); *see also Miles, Inc. v. Cookson America, Inc.,* 677 A.2d 505, 506 (Del.Ch.1995).

2. *Am. Legacy Found. v. Lorillard Tobacco Co.,* 895 A.2d 874, 877 (Del.Ch.2005); *In re ML/EQ Real Estate P'ship Litig.,* 2000 WL 364188, at *1 (Del.Ch. Mar. 22, 2000).

3. *Am. Legacy Found.,* 895 A.2d at 877; *In re ML/EQ,* 2000 WL 364188, at *1.

4. *Deloitte & Touche,* 2006 WL 345007, at *2 (citing *Stein v. Orloff,* 1985 WL 21136, at *2 (Del.Ch. Sept. 26, 1985)).

## II.

The companies' lead argument in support of their motion for reargument is that the court misapplied the law by employing a higher standard of review than that articulated in *Zapata Corporation v. Maldonado*[5] to evaluate the SLC's investigation and conclusions. According to the companies, this heightened standard of review is evident in the court's passing reference to the facts that Dardanelle is closely held and that the plaintiff, Martha Sutherland, claims to speak for 50% of its common stockholders. This argument plainly misconstrues the court's opinion. As set forth in the Memorandum Opinion, when a motion to dismiss is based on the findings of a *Zapata* special litigation committee, the moving party must shoulder a burden akin to summary judgment:

> The SLC is not entitled to any presumptions of independence, good faith, or reasonableness. Rather, the corporation has the burden of proof under Rule 56 standards, which require the corporation to establish the absence of any material issue of fact and its entitlement to relief as a matter of law. In addition, as the court in *Kaplan v. Wyatt*[, 484 A.2d 501 (Del.Ch.1984)] noted, the motion must be supported by a thorough record. It seems ... that what the Committee did or did not do, and the actual existence of the documents and the persons purportedly examined by it, should constitute the factual record on which the decision as to the independence and good faith of the Committee, and the adequacy of its investigation in light of the derivative charges made, must be based. Each

side has the opportunity to make a record on the motion. If the court is satisfied with the SLC's independence and good faith, and the reasonableness of its inquiry, the court may nonetheless exercise its own business judgment and deny the motion to dismiss.[6]

Moreover, in a case involving a one-person SLC, the moving party must prove that the SLC was "like Caesar's wife ... above reproach."[7] This rubric applies most obviously to the issue of the SLC's independence, but it is simple common sense that the same cautious approach should animate the court's evaluation of the good faith and reasonableness of a one-person SLC's investigation, and the reasonableness of its conclusions.[8]

In the Memorandum Opinion, the court concluded that the companies failed to carry their burden of showing that no material issue of fact existed regarding the good faith or reasonableness of the SLC's investigation into the claims alleged in the complaint. In reaching this result, the court simply applied established principles of Delaware law and did not apply any improperly heightened test. The closely held nature of Dardanelle's share ownership was mentioned merely for emphasis.

The companies next argue that the opinion misconstrued the facts when it criticized the SLC's admittedly intentional decision to omit from its report any reference to two large payments the companies made in 1999 and 2000 to Leo King for the benefit of the individual defendant Perry Sutherland. The SLC's report fails to mention these payments even though they represented the very sort of suspect-

---

5. 430 A.2d 779 (Del.1981).

6. *Sutherland v. Sutherland*, 958 A.2d 235, 239, 2008 WL 4808962, at *3 (Del.Ch. May 5, 2008) (citations omitted).

7. *Lewis v. Fuqua*, 502 A.2d 962, 967 (Del.Ch. 1985).

8. *See In re Oracle Corp. Deriv. Litig.*, 824 A.2d 917, 940 (Del.Ch.2003) (stating "the composition and conduct of a special litigation committee therefore must be such as to instill confidence in the judiciary and, as important, the stockholders of the company that the committee can act with integrity and objectivity").

ed activity that motivated Martha Sutherland to file the complaint and were the largest identified payments by the companies to any of the individual defendants, or on their behalf. According to the companies, the court should have considered evidence and argument to the effect that the SLC omitted reference to these payments only because the SLC determined that any claims relating to these payments were subject to a strong statute of limitations defense. The companies go so far as to argue that, by purportedly ignoring this evidence and argument, the opinion improperly "impugn[ed] the good faith of an independent director of a Delaware corporation and independent Delaware counsel."[9]

These criticisms are far off the mark. Not only did the SLC neglect to mention the King payments, it worded its report in such a way as to convey the impression that there were no such payments. As Martha points out in her opposition to this motion, the SLC implied in its report that the *only* benefit Perry received relative to work on his residence was the availability of a discount on construction supplies generally available to all members of the Sutherland family.[10] Indeed, neither the court nor Martha would have ever known about these payments from the report itself or the limited discovery the SLC voluntarily made to Martha. Rather, it was only after Martha won a hard-fought motion to compel that she gained access to documents evidencing these payments.

It is inadequate to suggest that the omission of this information from the report was justified by the SLC's unspoken conclusion that there was a strong statute of limitations defense to any claims that

might arise from these payments. On the contrary, a good faith effort to deal with the King payments issue necessarily required that the report both disclose the facts relating to the payments and present the analysis of Perry's defense. The SLC's failure to do so plainly prevented the court from concluding that the moving parties carried their burden of showing that this one-person SLC acted reasonably and in good faith.

■ As the court noted in its opinion, the additional fact that the SLC destroyed its original interview notes, after using them to prepare cursory and incomplete summaries of the interviews it conducted, further undermined the court's confidence in the good faith and reasonableness of the SLC's investigation. To put it simply, the touchstone of good faith in the context of a special litigation committee report is its demonstrated willingness to deal openly and honestly with all relevant and material information. Where, instead, the record shows that material information is consciously omitted from both the report and the investigative record on which it purports to rest, the court must wonder what other information was omitted or what other information might have been uncovered by a more diligent inquiry.

■ The companies next argue that the court's holding that the SLC's review of the general ledgers was unreasonable must be based on some misapprehension that the SLC agreed to conduct a forensic investigation of the general ledgers. The companies argue that such a forensic investigation would be unreasonable under *Zapata*, "especially where specific allegations as to personal expenses had proved to be demonstrably false."[11]

9.  Defs.' Br. 4.

10.  Report at 118.

11.  Defs.' Br. 6. The companies also contend that the court misapprehended a material fact

by ignoring the SLC's conclusion that Sutherland Lumber Company, not Maysville, invoiced Dardanelle for Perry's and Todd's use of the facilities, and that Dardanelle included these amounts in Perry's and Todd's W–2s

■ As an initial matter, the court never suggested a forensic investigation was required. However, the SLC was required to investigate the claims in the case, not merely the specific allegations Martha made in her complaint.[12] "Centrally, the complaint alleges that the individual defendants have used the companies' 'corporate funds and assets for personal benefit.'"[13] For this court to find that the SLC conducted a reasonable investigation into all of the claims alleged in the complaint, and for the SLC to properly point to its investigation of the ledgers as evidence of the reasonableness and thoroughness of its investigation of the complaint's claims,[14] the SLC ought to have conducted a review of the ledgers in a manner designed to identify payments from the companies to third parties on behalf of the individual defendants. Instead, as the SLC's member admitted in his deposition, the SLC's review of the ledgers would have failed to capture even the two large payments made to King on Perry's behalf. In short, the SLC's review of the general ledgers did nothing to help the moving parties meet their burden under *Zapata.*

### III.

For the reasons stated above, the nominal defendants' motion for reargument is DENIED. Each party shall bear its own costs.

---

after paying the invoices. These facts do not alter the court's analysis. First, aside from representations the SLC made in its report that are unsupported by any documents, the record is devoid of information as to how the SLC determined that all of the payments were included in Perry's and Todd's W–2s. Second, it remains true that the SLC's review of the companies' general ledgers would have missed payments made to third parties on Perry's behalf, including payments to Sutherland Lumber Company (whether or not later included in W–2s), to Perry's credit card issuers, and, most notably, to King. This fact contributed to the court's inability to conclude that the companies bore their burden of proof as to the reasonableness of the SLC's investigation of the ledgers.

**12.** *See Electra Inv. Trust, PLC v. Crews,* No. 15890, 1999 WL 135239, at *6 (Del.Ch. Feb. 24, 1999).

**13.** *Sutherland,* 958 A.2d at 237, 2008 WL 4808962, at *2 (citing Compl. ¶ 98).

**14.** Report at 121.