**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: February 12, 2020
Date Decided: March 11, 2020

Rudolf Koch, Esquire
Matthew W. Murphy, Esquire
Richards, Layton & Finger, P.A.
One Rodney Square
920 North King Street
Wilmington, DE 19801

T. Brad Davey, Esquire
Matthew F. Davis,
Andrew H. Sauder, Esquire
Caneel Radinson-Blasucci, Esquire
Potter Anderson & Corroon LLP
1313 N. Market Street
Wilmington, DE 19801

Re: *Manichaean Capital, LLC v. SourceHOV Holdings, Inc.*
C.A. No. 2017-0673-JRS

Dear Counsel:

In this statutory appraisal proceeding,[1] Respondent, SourceHOV Holdings,

Inc. ("SourceHOV" or the "Company"), has moved for reargument under Court of

Chancery Rule 59(f) (the "Motion")[2] following the Court's January 30, 2020, post-

---

[1] 8 *Del. C.* § 262.

[2] *See* Resp'ts' Mot. for Recons. (D.I. 111). Although the Motion is styled "Motion for Reconsideration," the rule cited and the standards expressed in the Motion are the standards for reargument. Accordingly, I treat the Motion as a motion for reargument.

trial Memorandum Opinion (the "Opinion").[3] In the Opinion, I determined the fair value of SourceHOV at the time of the Merger was $4,591 per share.[4] This determination was based, in part, on my calculation that SourceHOV's "fully 'diluted' share count" was 157,249 shares as of the applicable valuation date.[5]

In the Motion, SourceHOV asks that I recalculate SourceHOV's fair value by adding another 14,655 "vested" but not yet "settled" Restricted Stock Units ("RSUs") to SourceHOV's share count.[6] After carefully considering the Motion, I am satisfied it must be denied because it makes new arguments SourceHOV should have raised, at the latest, before post-trial argument.

---

[3] *Manichaean Capital, LLC v. SourceHOV Hldgs., Inc.*, 2020 WL 496606, at *2 (Del. Ch. Jan. 30, 2020).

[4] *Id.*, at *1–2. I use the same conventions and definitions here as were used in the Opinion.

[5] *Id.*, at *26.

[6] Motion at 4, 6.

## I. BACKGROUND

SourceHOV was a Delaware corporation that provided process outsourcing and financial technology services within several industries. [7] Petitioners, Manichaean Capital, LLC, Charles Cascarilla, Emil Khan Woods, LGC Foundation, Inc. and Imago Dei Foundation, Inc. (collectively, "Manichaean"), were SourceHOV stockholders at the time of the Merger.[8] They properly perfected their right to appraisal of their SourceHOV shares and the Court conducted a trial for that purpose last year.

As discussed in the Opinion, I determined SourceHOV's fair value after considering "all relevant factors," including SourceHOV's outstanding share count.[9] Outstanding share count forms the denominator by which the appraised-entity's total

---

[7] *Manichaean Capital*, 2020 WL 496606, at *2.

[8] *Id.*

[9] *Id.*, at *26.

value must be divided. [10]    A higher share count will dilute any individual

stockholder's holdings (including Manichaean's).[11]

At trial, the parties disputed whether SourceHOV's RSUs should be included

in the count.[12]  The RSUs were subject to forfeiture under SourceHOV's Long-Term

Incentive Plan (the "Plan") based on contingencies such as death and termination of

employment with SourceHOV.[13]  Manichaean's expert ("Meinhart") opined that

unvested RSUs should be excluded from the share count. [14]   After carefully

considering the testimony, I found Meinhart's share count calculation was justified

because he had credibly explained why it was "at best, speculative" whether the

---

[10] *Id.* (total enterprise value / outstanding share count = per share value).

[11] *Id.*

[12] *Id.*

[13] *Id.*

[14] *Id.*

RSUs would vest and actually dilute SourceHOV's existing stockholders' holdings.[15]

In the Motion, SourceHOV advances for the first time a distinction between (i) issued and outstanding shares of SourceHOV's stock, (ii) vested but *unsettled* RSUs and (iii) unvested RSUs.[16]  As to the first category, SourceHOV does not dispute that the Court correctly calculated the issued and outstanding shares of SourceHOV's stock (i.e., 157,249 shares).[17]  The Motion focuses on a newly articulated distinction between the second and third categories.  If the Court were to draw this distinction, SourceHOV maintains that the Company's outstanding share count would increase by 14,665 shares, and Manichaean's shares would be worth $4,039,168 less.[18]

---

[15] *Id.*

[16] Motion at 4, 6.

[17] *Id.* at 3; *Manichaean Capital*, 2020 WL 496606, at *26.

[18] Motion at 5, 8 (If the total outstanding share count increases, then SourceHOV's total enterprise value must be divided by a larger number, yielding a lower per-share value.).

In advancing this new argument, SourceHOV candidly admits:

> It did not present the issue of including vested [but unsettled] RSUs in the fully-diluted share count in its trial briefs, expert reports, or at trial. Indeed, there was no dispute between the parties that vested RSUs should be included in the share count. The only dispute between the parties as to RSUs was whether *unvested* RSUs should be in the share count, and that is where the parties focused the Court's attention. The mistake was that [SourceHOV] and its expert, as well as [Manichaean] and their expert, simply used (and presented to the Court) the incorrect baseline share count.[19]

To understand the distinction SourceHOV now asks the Court to draw, it is useful to trace the means by which RSUs convert into outstanding shares of stock. As addressed in the Opinion, RSUs begin in an "unvested" state.[20] This means they are subject to forfeiture under the Plan if, for example, the holder dies or leaves her employment with the Company.[21] SourceHOV admits that the distinction between vested and unvested RSUs is the only distinction the parties disputed at trial.[22]

---

[19] *Id.* at 2.

[20] *Manichaean Capital*, 2020 WL 496606, at *26.

[21] *Id.*

[22] Motion at 2.

According to SourceHOV, RSUs may *vest* but not yet convert into a share of stock (i.e., settle).[23]  SourceHOV says RSUs will continue in this "vested" but "unsettled" state "until 2020 at the earliest."[24]  From this unsettled state, RSU can settle and convert into outstanding shares of stock under conditions provided in the Plan.[25]  As noted, SourceHOV argues there were 14,665 shares in the second category (a vested but unsettled state) that should have been included in the share count.[26]

Beyond its objection that SourceHOV cannot present a new argument on reargument, Manichaean responds to the Motion by arguing that many of the contingencies to which unvested RSUs are subject also apply to unsettled RSUs.[27] In other words, according to the Plan, RSUs are subject to many of the same

---

[23] *Id.* at 4.

[24] *Id.*

[25] *Id.*

[26] *Id.* at 5.

[27] Pet'rs' Opp'n to Resp'ts' Mot. for Recons. ("PO") (D.I. 112) at 7.

forfeiture conditions while in the vested but unsettled state as exist when RSUs are in an unvested state. For example, under the Plan, as is provided in "standard RSU form agreements," "in the event that [a] Grantee's employment is terminated by the Company . . . for cause, all [RSUs] (*whether vested or unvested*) *that have not yet been settled* shall be automatically forfeited for no consideration."[28] Thus, according to Manichaean, the same contingencies that render it speculative whether unvested RSUs will convert to stock also apply to vested but unsettled RSUs.

## II. ANALYSIS

"A motion for reargument under Court of Chancery Rule 59(f) will be denied unless the court has overlooked a controlling decision or principle of law that would have controlling effect, or the court has misapprehended the law or the facts so that the outcome of the decision would be different."[29] Reargument motions may not be used to re-litigate matters already litigated or, especially relevant here, to present

---

[28] *Id.* (citing JX 391 at 2) (emphasis supplied).

[29] *Those Certain Underwriters at Lloyd's, London v. Nat'l Installment Ins. Servs.*, 2008 WL 2133417, at *1 (Del. Ch. May 21, 2008).

arguments or evidence that could have been presented before the court entered the order from which reargument is sought.[30]  In other words, a motion for reargument may not rehash old arguments or invent new ones.[31]

SourceHOV and Manichaean advance different characterizations of vested but unsettled RSUs.  On the one hand, SourceHOV argues they clearly should be part of the Company's outstanding share count.  It says the parties simply overlooked the unsettled RSUs in what amounts to a scriveners error, as reflected in the experts' reports, because "[the unsettled RSUs] were disclosed separately in notes to [SourceHOV's] financial statements." [32]  On the other hand, as noted above,

---

[30] 11 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2810.1 (3d ed. 2019).

[31] *Reserves Dev. LLC v. Severn Sav. Bank, FSB*, 2007 WL 4644708, at *1 (Del. Ch. Dec. 31, 2007) (citing *Miles, Inc. v. Cookson Am., Inc.*, 677 A.2d 505, 506 (Del. Ch. 1995) ("Reargument under Court of Chancery Rule 59(f) is only available to re-examine the existing record; therefore, new evidence generally will not be considered on a Rule 59(f) motion.")); *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 975581, at *1 (Del. Ch. Mar. 4, 2010) ("[A] motion for reargument is 'not a mechanism for litigants to relitigate claims already considered by the court,' or to raise new arguments that they failed to present in a timely way.") (quoting *Am. Legacy Found. v. Lorillard Tobacco Co.*, 895 A.2d 874, 877 (Del. Ch. 2005)).

[32] Motion at 2.

Manichaean argues the same contingencies that render unvested RSUs unsuitable for inclusion in the Company's outstanding stock count also affect vested but unsettled RSUs.[33]

A motion for reargument is not the appropriate procedural vehicle to decide which party's characterization is correct. *First*, as noted in the Opinion, I found Meinhart's decision to exclude certain RSUs from the Company's share count was credible because it is speculative whether the RSUs will dilute other shareholders.[34] As an extension of this reasoning, it is a critical question whether the same contingencies apply to vested but unsettled RSUs. Answering this question would require the Court to weigh the evidence in favor of each party's proffered interpretation of the Plan. The problem is this evidence was not presented to the

---

[33] *See* PO at 2–3 (noting that vested but unsettled RSUs are subject to forfeiture based on continued employment and are subject to amendment by the Company at any time).

[34] *Manichaean Capital*, 2020 WL 496606, at *26.

Court during trial, nor was it addressed during the post-trial arguments. A court cannot "re-weigh evidence" on a motion for reargument.[35]

*Second*, at this stage, nothing supports SourceHOV's assertion that *both* experts overlooked vested but unsettled RSUs by mistake except the *ipse dixit* of SourceHOV.[36] Expert testimony was particularly important in this trial.[37] Indeed, much of the Court's decision rested on its determinations of the credibility of the party's respective valuation experts.[38] To adjudicate SourceHOV's new arguments, including their basic premise that the valuation experts simply missed the distinction between unvested and vested but unsettled RSUs, the Court would have to re-open the evidentiary record. Now that the Court has rendered its trial verdict, the window

---

[35] *Tumulty v. Schreppler*, 2015 WL 2374714, at *2 (Del. Ch. May 15, 2015).

[36] Motion at 2–3.

[37] *Manichaean Capital*, 2020 WL 496606, at *17–18.

[38] *Id.* at *2.

for receiving new evidence (specifically fact or expert evidence regarding vested but

unsettled RSUs and their effect on SourceHOV's fair value) has closed.[39]

 For the foregoing reasons, the Motion is DENIED.

 **IT IS SO ORDERED.**

       Very truly yours,

       ***/s/ Joseph R. Slights III***

---

[39] *Reserves Dev. LLC,* 2007 WL 4644708, at \*1 ("Reargument under Court of Chancery Rule 59(f) is only available to re-examine the existing record; therefore, new evidence generally will not be considered on a Rule 59(f) motion.") (citing *Miles, Inc. v. Cookson Am., Inc.*, 677 A.2d 505, 506 (Del. Ch. 1995)).