# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

HAWK INVESTMENT HOLDINGS LTD., )
)
)
Plaintiff, )
)
v. ) C.A. No. 2022-0930-JTL
)
STREAM TV NETWORKS, INC., and )
TECHNOVATIVE MEDIA INC. )
)
)
Defendants. )

## ORDER DENYING DEFENDANTS' MOTION FOR REARGUMENT

1. This court previously issued a memorandum opinion that granted a motion for partial summary judgment filed by plaintiff Hawk Investment Holdings Ltd. ("Hawk") and denied a motion to dismiss filed by defendants Stream TV Networks, Inc. and Technovative Media Inc. (together, "Stream"). *Hawk Inv. Hldgs. Ltd. v. Stream TV Networks, Inc.*, 2022 WL 17258460 (Del. Ch. Nov. 29, 2022) (the "Memorandum Opinion" cited as "Mem. Op."). On December 5, 2022, Stream moved for reargument under Court of Chancery Rule 59(f). Dkt. 81 (the "Motion" cited as "Mot.").

2. "The proper purpose of a Rule 59(f) motion for reargument is to request the trial court to reconsider whether it overlooked an applicable legal precedent or misapprehended the law or the facts in such a way as to affect the outcome of the case, not to raise new issues." *Chrin v. Ibrix Inc.*, 2012 WL 6737780, at *2 (Del. Dec. 31, 2012) (TABLE). "To succeed and obtain reargument, the moving party must demonstrate that the Court's decision was predicated upon a misunderstanding of a material fact or a misapplication of the law." *Fisk Ventures, LLC v. Segal*, 2008 WL 2721743, at *1 (Del.

Ch. July 3, 2008) (internal quotation marks omitted), *aff'd*, 984 A.2d 124 (Del. 2009) (TABLE). A Rule 59(f) motion is "not a mechanism for litigants to relitigate claims already considered by the court." *Id.* (quoting *Am. Legacy Found. v. Lorillard Tobacco Co.*, 895 A.2d 874, 877 (Del. Ch. 2005)). "[R]elief under Rule 59 is available to prevent injustice— not to offer a forum for disgruntled litigants to recast their losing arguments with new rhetoric." *Id.* (internal quotation marks omitted).

3. The Motion contends that the Memorandum Opinion "is grounded upon a mixed mistake of law and misapprehension of fact: that Stream conceded Hawk's standing." Mot. ¶ 4. The Motion asserts that "Stream does not concede Hawk's standing; the point of Stream's motion to dismiss was that Hawk does not hold standing to sue Stream on Section 225, because it assigned away all its rights." *Id.*

4. The Motion is a disappointing effort by Stream to recast its positions and retract a concession. Stream did not argue that Hawk lacked statutory standing to bring a Section 225 proceeding. Stream argued that Hawk was not a real party in interest under Rule 17. Dkt. 53 at 17–19.

5. During oral argument, Stream's counsel confirmed that Stream was not arguing that Hawk lacked statutory standing under Section 225. The court and the parties focused on that issue because Hawk argued that the real-party-in-interest problem could be cured by adding SeeCubic, Inc. as a plaintiff. In response to questions from the court, Stream's counsel answered that adding SeeCubic was not a viable solution, because SeeCubic lacked statutory standing to sue under Section 225. Dkt. 77 at 50–51. At that point, the court sought to confirm that Stream did not dispute Hawk's statutory standing.

The answer that Stream's counsel gave was clear and unambiguous: "That is correct, Your Honor. They have statutory standing." Dkt. 77 at 52.

6.      The Memorandum Opinion accepted that concession and ruled Hawk's statutory standing was sufficient under Rule 17 to qualify Hawk as a real party in interest. 2022 WL 17258460, at *7. Stream may not use a motion for reargument to undue a concession it now regrets making. *See Fisk Ventures*, 2008 WL 2721743, at *1.

7.      Admittedly, Stream argued that Hawk lacked standing to bring a declaratory judgment action. Dkt. 53 at 19. That was a separate argument. Stream never took the position that Hawk lacked statutory standing to bring a Section 225 proceeding. As noted, Stream acknowledged during oral argument that Hawk had statutory standing under Section 225. Dkt. 77 at 52. The court then followed up to confirm Stream's position that SeeCubic lacked statutory standing and offered a hypothetical under which a debtor held the voting rights that had been exercised to generate the result being litigated in the Section 225 action. Stream's counsel maintained that the debtor would lack statutory standing to bring a Section 225 action, responding:

> I'm trying to think if there's a hypothetical circumstance that would avoid the statute. I can't think of a hypo, Your Honor. *It doesn't apply to Hawk. We're not trying to say that they're not a stockholder.* SeeCubic doesn't own any shares. So I think the answer is yes, they may have constitutional standing, but not prudential standing under the statute, would be the way that I would analogize that.

*Id.* (emphasis added). Stream's position was clear: SeeCubic lacked statutory standing, but that argument "doesn't apply to Hawk." *Id.*

8. Later, after Hawk objected that Stream was advancing a new argument, Stream's counsel explained that he could not have raised his argument about SeeCubic's lack of statutory standing earlier because Hawk had not yet proposed adding SeeCubic as a plaintiff and his argument about statutory standing did not apply to Hawk: "I couldn't have asserted that, Your Honor, because Hawk owns equity. It is a stockholder. So it's not a valid defense as to Hawk. If SeeCubic tries to sue on this theory, I would assert it against SeeCubic." *Id.* at 58. Once again, Stream's position was clear: SeeCubic lacked statutory standing, but that argument was "not a valid defense as to Hawk." *Id.*

9. Disappointingly, Stream now asserts that it only acknowledged Hawk's status as a stockholder of Stream and did not concede that Hawk had statutory standing under Section 225. Mot. ¶ 5. That is disingenuous.

10. The Motion is also disappointing in that it mischaracterizes the Memorandum Opinion. Stream claims:

> The Court has ruled that a nonshareholder creditor (here, SeeCubic) can deputize a shareholder (here, Hawk) via post-litigation principal-agent agreement (here, the Collateral Agreement) to enforce the principal's creditor claims qua the agent's shareholder status under Section 225. In essence, the Opinion holds that creditors can champertously hire shareholders to sue on Section 225 as agents to enforce their creditor claims, thereby expanding Section 225 to allow de facto non-stockholder creditor plaintiffs. On research after the Opinion, Stream found no Delaware precedent endorsing a hire-a-strawman-shareholder-plaintiff interpretation of Section 225.

Mot. ¶ 3. There is a lot of outrage packed into that paragraph.

11. The Memorandum Opinion did not do anything of the sort. The Memorandum Opinion found that under Section 225, a stockholder—any stockholder— has standing to litigate a Section 225 proceeding, which is sufficient for purposes of Rule

- 4 -

17. 2022 WL 172558460, at *6. The Memorandum Opinion viewed the relationship between the stockholder and the party exercising the voting right as irrelevant:

> Under this regime, the plaintiff in a Section 225 action does not have to be the party that exercised the voting power or other authority necessary to achieve the election, appointment, removal, or resignation of the director. Any stockholder or any director can bring the Section 225 action, as can any officer whose title to office is contested.

*Id.* Nothing about the decision turns on "deputiz[ing] a shareholder," and there is nothing champertous about recognizing that a stockholder has statutory standing to bring a proceeding under Section 225.

12. The Motion also asserts hyperbolically that the Memorandum Opinion "expands Section 225 to allow creditor-principal plaintiffs, and also to pierce the corporate veil to litigate Section 225 claims." Mot. ¶ 4. The "creditor-principal plaintiffs" accusation seems to be a reprise of the "deputiz[ing] a shareholder" contention, but the bit about piercing the corporate veil adds something new.

13. The Memorandum Opinion did not allow anyone to pierce the corporate veil. In the course of explaining why Stream's application of the real-party-in-interest requirement to Section 225 would have pernicious results, the Memorandum Opinion noted that there was an open issue as to whether a parent-level stockholder would have standing to litigate a Section 225 proceeding involving a wholly owned subsidiary, stating: "And although Stream has not advanced the argument in this case, the same issue could arise in a 100% controlled subsidiary whenever a party other than the controller had the power to exercise voting rights, whether under a pledge agreement, irrevocable proxy, or otherwise." 2022 WL 172558460, at *7. The Memorandum Opinion did not reach that issue because

Stream had conceded that Hawk had statutory standing to sue under Section 225. The court did observe in a footnote that there could be debate on that topic and commented that historically, standing to sue under Section 225 has been interpreted broadly to extend to holders of beneficial interests. *Id.* at *7 n.4. Again, the court did not rule on the issue.

14. Stream's counsel has now seized on the court's observation to cry wolf about veil piercing. The Memorandum Opinion did not engage in veil piercing. As this court has explained at length elsewhere, the separate legal existence of juridical entities is fundamental to Delaware law, as are the correlative principles of limited liability and asset partitioning, but that does not mean that every legal doctrine stops at the corporate edge. *See Feeley v. NHAOCG, LLC*, 62 A.3d 649, 667–71 (Del. Ch. 2012) (discussing different dimensions of corporate separateness and their relationship to veil piercing); *see also Virtus Cap. L.P. v. Eastman Chem. Co.*, 2015 WL 580553, at *16 (Del. Ch. Feb. 11, 2015) (same). Addressing whether a parent-level stockholder had standing to bring a Section 225 claim involving a wholly owned subsidiary would not involve piercing the corporate veil, any more than Section 271's extension to "the property or assets of any subsidiary of the corporation" pierces the corporate veil of the parent entity. *See* 8 *Del. C.* § 271(c); *see also Hollinger Inc. v. Hollinger Int'l, Inc.*, 858 A.2d 342, 348 (Del. Ch. 2004) (suggesting that interpretation of Section 271 before the statutory amendment to include subsidiaries). For purposes of statutory standing under Section 225, any such ruling would require considering the meaning of "stockholder" for purposes of the statute, concepts of beneficial and equitable ownership, and whether a parent-level stockholder had a sufficient interest in a subsidiary-level *res* to invoke an important provision of the DGCL. But to reiterate,

the court did not rule on the issue, precisely because Stream conceded that Hawk had statutory standing.

15.     In the Memorandum Opinion, the court observed that one of Stream's arguments used "slippery language, which Stream has a habit of deploying." 2022 WL 17258460, at *16. Sadly, the Motion is more of the same.

16.     The court did not misapprehend the facts or the law. The Motion is DENIED.

Vice Chancellor Laster
December 14, 2022