# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 15, 2011 Session

## CYNTHIA H. KOVACS-WHALEY, DIRECTOR AND SHAREHOLDER OF WELLNESS SOLUTIONS, INC. v. WELLNESS SOLUTIONS, INC. ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 09147-II     Carol McCoy, Chancellor

### No. M2011-00089-COA-R3-CV - Filed March 16, 2012

Plaintiff, an employee, shareholder, and director of Wellness Solutions Inc., filed this action against the Company and shareholders Steven Scesa and Laura Reaves following the termination of Plaintiff's employment with Wellness Solutions, Inc., asserting a shareholder derivative action and claims for breach of fiduciary duty and duty of good faith. Following her termination and the initiation of this action, the Company exercised a call option contained within the Shareholders' Agreement and purchased Plaintiff's stock. Plaintiff then amended her complaint to include claims for breach of contract and false light invasion of privacy against Mr. Scesa. The trial court summarily dismissed all of Plaintiff's claims. We reverse the summary dismissal of Plaintiff's claim for breach of contract finding there are genuine issues of material fact. We also reverse the summary dismissal of Plaintiff's claim for false light invasion of privacy finding that Mr. Scesa, as the moving party, failed to negate the essential element of damages or demonstrate that Plaintiff cannot prove the essential element of damages at trial. We affirm the summary dismissal of Plaintiff's claims for breach of fiduciary duty, breach of the duty of good faith, and breach of the duty of loyalty upon the finding the Defendants demonstrated that the business judgment rule applies to their decisions at issue, which negates an essential element of each of these claims. Further, we deny Defendants' request for attorneys' fees pursuant to Tennessee Code Annotated § 47-56-401(c) upon the finding that Plaintiff did not properly bring a shareholder's derivative action.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed in Part, Affirmed in Part, and Remanded

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and ANDY D. BENNETT, J., joined.

Edward A. Hadley, Nashville, Tennessee, for the appellant, Cynthia H. Kovacs-Whaley, on behalf of and as Director of Wellness Solutions, Inc., and as a Shareholder of Wellness Solutions, Inc.

Russell B. Morgan and Emily R. Walsh, Nashville, Tennessee, for the appellees, Wellness Solutions, Inc., Steven L. Scesa and Laura S. Reaves.

**OPINION**

Cynthia Kovacs-Whaley, (Plaintiff) was formerly a shareholder, employee, and director of Wellness Solutions, Inc. ("the Company"). This action arises from the termination of Plaintiff's employment with the Company and the subsequent removal of her as a director and the unilateral purchase of all of her shares in the Company upon the exercise of a Call Option in the Shareholders' Agreement.

The Company, which was formed in July 2005, is in the business of providing nurse practitioners, psychologists, and other medical professions to nursing home facilities. The original shareholders and directors of the company are Steven L. Scesa and his sister, Laura S. Reaves. On September 19, 2005, Plaintiff and Mitzi Wood-Von Mizenor,[1] acquired a minority interest in the Company by entering into a Shareholders' Agreement. At the time, defendants Scesa and Reaves owned 280 shares of the Company each, Ms. Wood-Von Mizenor owned 180 shares, and Plaintiff owned 260 shares. That same day, Plaintiff and Wood-Von Mizenor were elected Vice-Presidents of the Company, and additional directors of the Company to serve along with Scesa and Reaves.

In June 2008, the Company purchased Wood-Von Mizenor's shares by mutual agreement for $1,000 per share. Thereafter, Reaves and Scesa owned 68 percent of the stock (34 percent each) and Plaintiff owned 32 percent.

In October 2008, Scesa asked Plaintiff and Reaves to sign an Employee Non-Disclosure Agreement, an Intellectual Property Agreement, and an Executive Employment Agreement, which contained a non-compete clause. Reaves signed all three agreements on October 31, 2008. Plaintiff, however, refused to sign the agreements until Scesa provided financial reports and disclosed to her what her salary would be under the Employment Agreement. The requested information was not provided and Plaintiff did not sign any of the agreements.

---

[1]Wood-Von Mizenor is not a party to this litigation.

At a special meeting of the Board of Directors on December 22, 2008, Plaintiff's employment with the Company was terminated by a majority vote of the directors, specifically Scesa and Reaves.

One month later, on January 23, 2009, Plaintiff filed this action in the Davidson County Chancery Court against the Company and Scesa and Reaves, individually (collectively "Defendants"). In the original complaint, Plaintiff asserted a shareholder derivative action pursuant to Tennessee Code Annotated § 48-17-401, a claim for breach of fiduciary duty and duty of good faith, and a direct action against Defendants. Plaintiff further sought an injunction to restore her to her duties with the Company and to prevent Defendants from taking any further adverse action against her. The chancery court denied Plaintiff's request for an injunction. Defendants filed an Answer and Counter-Claim asserting that Plaintiff breached the duty of loyalty and violated an obligation to work exclusively for the Company. Defendants also sought attorneys' fees pursuant to Tennessee Code Annotated § 48-17-401.

In the meantime, on February 29, 2009, Plaintiff was notified that the Company was exercising the call option as described in paragraph 6 of the Shareholders' Agreement and would be purchasing her stock. Paragraph 6 provided that:

(a) Option. At any time (x) on or after the date hereof through August 30, 2015 and (y) after August 30, 2015 in the case of any Shareholder's death, incompetence or the assertion of power with respect to such Shareholder's Common shares by any person other than another Shareholder (including, but not limited to, pursuant to a power of attorney), the Company shall be entitled to purchase, at its sole option, and each Shareholder (or such Shareholder's personal representative in the case of death or incompetence or the person asserting power with respect to such Shareholder's Common Shares, in each case in this Section 6) shall be obligated to sell, all or any part of his or her Common Shares, for cash, upon not less than thirty (30) days' nor more than sixty (60) days' notice provided in the manner specified in Section 6(b), at a purchase price per share of Common Stock owned by such Shareholder equal to the greater of (I) Ten Dollars ($10.00) per share if the Company shall have given its Option Notice to such Shareholder on or before December 31, 2006, (ii) Twenty-Five Dollars ($25.00) per share if the Company shall have given its Option Notice to such Shareholder on or after January 1, 2007 and on or before August 30, 2010, (iii) Fifty Dollars ($50.00) per share if the Company shall have given its Option Notice to such Shareholder on or after August 31, 2010, or (iv) the Per Share Stock Value.

-3-

The Per Share Stock Value was defined by the Shareholders' Agreement as follows:

"Per Share Stock Value" means, as of the date of determination (which shall be as of the close of business on the date either the Company gives notice pursuant to Section 6(b)(I) or a Shareholder gives notice pursuant to Section 7), the appraised fair market value per share of the Company's Common Stock as of the date of the determination of the Per Share Stock Value, as set forth in an appraisal obtained by the Company (at the Company's sole expense pursuant to a notice pursuant to Section 6(b)(ii) given on or before August 30, 2010, or at such Shareholder's sole expense pursuant to Section 7) performed by an appraiser reasonably acceptable to the Company and such Shareholder; provided, that in the case of the inability of the Company to purchase, all of the shares of Common Stock subject to such notice pursuant to Section 7 of this Agreement, the greater of the price determined pursuant to the process above as of the date such Shareholder's shares of Common Stock (a) would have been purchased if the "put" or purchase obligation was originally honored in accordance with its terms, or (b) the date they are in fact purchased. The Per Share Stock Value shall be calculated by the certified public accountant or accounting firm that audited the Company's financial statements for the most recently ended fiscal year of the Company as of the date of determination thereof.

No audit had been performed on the Company in the most recently ended fiscal year prior to the exercise of the call option, which was 2008. Vic Alexander, a CPA with Kraft CPAs, PLLC, had prepared financial statements and tax returns for the Company; however, he declined to perform the stock valuation citing a conflict. Mr. Alexander recommended Thomas Price with Price CPAs as an alternative.

Before deciding to utilize Mr. Price to value the stock, Mr. Scesa engaged in informal communications with Mr. Price about pricing the stock. On February 21, 2009, Mr. Scesa received an informal valuation of Plaintiff's stock from Mr. Price. After obtaining the informal valuation from Mr. Price, the Company notified Plaintiff that it was exercising the call option and that it would purchase all of her shares pursuant to paragraph 6 of the Shareholders' Agreement. Notice of the call was provided to Plaintiff by letter on February 25, 2009. That same day, Plaintiff, through her attorney, objected to the selection of Mr. Price as the appraiser in an email.[2] Plaintiff's objection notwithstanding, the Company used Mr. Price's valuation report to establish the per share value, which was $129.04, and on April

_____

[2]It is unclear from the record how Plaintiff became aware that Thomas Price would be the appraiser of the Per Share Stock Value.

10, 2009, Plaintiff was paid $33,549.92 for all of her shares in the Company. Effective April 10, 2009, Plaintiff was no longer affiliated with the Company in any manner.

On January 4, 2010, Plaintiff filed an Amended Complaint asserting claims for breach of the duties of loyalty and good faith and breach of fiduciary duty, as well as breach of the Shareholders' Agreement. Plaintiff also asserted a false light invasion of privacy, defamation, and business defamation claim against Scesa alleging that Scesa made false representations to a business colleague that Plaintiff was terminated for taking money from the Company.

Following discovery, Plaintiff and Defendants filed competing motions for summary judgment, each seeking dismissal of claims asserted against them respectively. In an order entered August 31, 2010, the trial court held that no derivative shareholder's cause of action existed because the statutory grounds did not exist. As to Defendants' motion for summary judgment seeking the dismissal of the claims asserted by Plaintiff, the court ruled in their favor finding there was no genuine issues of material fact and that as a matter of law, Defendants had not breached the Shareholders' Agreement or the duties of loyalty, good faith, and fiduciary duty, and further found that Defendants were entitled to rely on the business judgment rule. The court found that the Shareholders' Agreement was valid and enforceable and that Defendants properly utilized the call option. The court ruled in Defendant Scesa's favor on the false light claim because of "lack of any proof of damages."[3] The court also ruled in Plaintiff's favor on her motion for summary judgment and dismissed the Company's breach of loyalty claim against her on the finding it failed to demonstrate that Plaintiff worked for other companies in excess of the time approved by the Company.[4]

On September 20, 2010, Plaintiff filed a motion to alter or amend the judgment contending there are genuine issues of material fact as to whether Thomas Price was a reasonably acceptable appraiser and as to interest paid to Scesa on deferred salary and loan payments, which related to Plaintiff's claims for breach of fiduciary duty and breach of the duties of loyalty and good faith. Plaintiff also contended that there were genuine issues of material fact on her claim for false light invasion of privacy. In support of her motion, Plaintiff filed an affidavit of her own and an affidavit of her expert on the value of her stock, Robert Whisenant, C.P.A., whose deposition was previously filed with the court.

The court issued an Order on December 8, 2010, denying Plaintiff's motions. The court ruled that the additional affidavits filed in support of her motion failed to comply with Tennessee Rule of Civil Procedure 59 and therefore would not be considered. Further, the

---

[3]Plaintiff conceded the defamation claims; therefore, the trial court dismissed those claims.

[4]Defendants do not challenge this ruling by the trial court on appeal.

court held that no reasonable jury could conclude that Plaintiff was reasonable in her objection to Thomas Price as an appraiser and the prior transaction between the Company and Ms. Wood-Von Mizenor did not constitute evidence of fair market value. The court also held that there was no evidence Defendants breached their fiduciary duty. Plaintiff filed a timely appeal.

## STANDARD OF REVIEW

The trial court resolved these issues on motions for summary judgment. Summary judgment is appropriate when a party establishes that there is no genuine issue as to any material fact and that a judgment may be rendered as a matter of law. Tenn. R. Civ. P. 56.04; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). It is appropriate in virtually all civil cases that can be resolved on the basis of legal issues alone. *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Pendleton v. Mills*, 73 S.W.3d 115, 121 (Tenn. Ct. App. 2001). It is not appropriate when genuine disputes regarding material facts exist. *See* Tenn. R. Civ. P. 56.04. The party seeking summary judgment bears the burden of demonstrating that no genuine disputes of material fact exist and that the party is entitled to judgment as a matter of law. *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). To be entitled to summary judgment, the moving party must affirmatively negate an essential element of the nonmoving party's claim *or* show that the moving party cannot prove an essential element of the claim at trial. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008).

Summary judgments do not enjoy a presumption of correctness on appeal. *BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003). Because the resolution of a motion for summary judgment is a matter of law, we review the trial court's judgment de novo with no presumption of correctness. *Martin v. Norfolk Southern Ry. Co.,* 271 S.W.3d 76, 84 (Tenn. 2008) The appellate court makes a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn. 1977). As does the trial court, the appellate court considers the evidence in the light most favorable to the nonmoving party and resolve all inferences in that party's favor. *Martin,* 271 S.W.3d at 84; *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003); *Godfrey v. Ruiz*, 90 S.W.3d 692, 695 (Tenn. 2002). When reviewing the evidence, the appellate court first determines whether factual disputes exist. If a factual dispute exists, the court then determines whether the fact is material to the claim or defense upon which the summary judgment is predicated and whether the disputed fact creates a genuine issue for trial. *Byrd v. Hall,* 847 S.W.2d 208, 215 (Tenn.1993).

A party is entitled to summary judgment only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." Tenn. R. Civ. P. 56.04. A properly supported motion for summary judgment must show that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000); *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998). If the moving party makes a properly supported motion, then the nonmoving party is required to establish the existence of the essential elements of the claim. *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215. If, however, the moving party does not properly support the motion, then the nonmoving party's burden to produce either supporting affidavits or discovery is relieved and the motion must fail. *McCarley*, 960 S.W.2d at 588; *Martin,* 271 S.W.3d at 83.

To make this showing and shift the burden of production, a moving party may: 1) affirmatively negate an essential element of the nonmoving party's claim; or 2) show that the nonmoving party cannot prove an essential element of the claim at trial. *Martin*, 271 S.W.3d at 83; *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 5 (Tenn. 2008); *Byrd*, 847 S.W.2d at 215 n.5. Whichever approach the moving party takes, both require more than assertions of the nonmoving party's lack of evidence. *Martin*, 271 S.W.3d at 83-84. In addition, the moving party must present evidence that more than "raises doubts" about the ability of the nonmoving party to prove its claim at trial. *Id.* at 84. The moving party must produce evidence or refer to previously submitted evidence. *Id.*; *accord Hannan*, 270 S.W.3d at 5. Thus, to negate an essential element of a claim, a moving party must refer to evidence that tends to disprove an essential element of the claim made by the nonmoving party. *Martin*, 271 S.W.3d at 84.

Defendants, as the moving party, had the burden to *negate* an essential element of Plaintiff's claims *or* establish that Plaintiff *cannot prove* an essential element of her claims at trial. *See Martin*, 271 S.W.3d at 83 (citing *Hannan*, 270 S.W.3d at 5; *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5). Therefore, Defendants were required to shift the burden of production to Plaintiff by either affirmatively negating an essential element of Plaintiff's claims or showing that Plaintiff cannot prove an essential element of her claims at trial. *Martin*, 271 S.W.3d at 83; *Hannan*, 270 S.W.3d at 8-9; *McCarley*, 960 S.W.2d at 588.

**ANALYSIS**

There are several issues raised in this appeal. Plaintiff asserts that the trial court erred in enforcing the Shareholders' Agreement. She contends that the trial court erred in summarily dismissing her claims for breach of fiduciary duty, loyalty, and good faith, and her false light invasion of privacy claim against Mr. Scesa. For their sole issue, Defendants argue that the trial court erred in denying Defendants' request for an award of attorneys' fees based

upon its determination that Plaintiff's action was not a shareholder's derivative action pursuant to Tennessee Code Annotated § 48-17-401.

## I. BREACH OF CONTRACT

The trial court found that the Shareholders' Agreement was valid and enforceable and the exercise of the call option under the Agreement did not constitute a breach of contract. The trial court found that the use of Mr. Price as the appraiser fulfilled the requirement in section 6 of the Shareholders' Agreement and satisfied the parties' intent that a reasonable appraiser be used. In the trial court's order denying Plaintiff's motion to alter or amend, the court clarified its ruling on this issue finding that "no reasonable jury could conclude that Plaintiff was reasonable in her objection to Mr. Price as a reasonabl[y] acceptable appraiser as required by the Shareholders' Agreement."

Plaintiff challenges this decision on several grounds. We have determined that one of her challenges is dispositive of this issue for purposes of this appeal. We have concluded that summary judgment should not have been granted on this issue because there is a genuine dispute concerning whether Plaintiff's objection to the selection of Mr. Price as the appraiser to determine the Per Share Stock Value was reasonable under the circumstances of this case. *See* Tenn. R. Civ. P. 56.04; *see also Stovall*, 113 S.W.3d at 721 (stating summary judgment is only appropriate when there are no genuine issues of material fact and judgment can be granted as a matter of law).

The Company exercised the call option pursuant to Section 6 of the Shareholders' Agreement. Pursuant to the terms of the call option, Plaintiff was obligated to sell her stock for either $25.00 per share or the Per Share Stock Value, whichever was greater. The Shareholders' Agreement defines Per Share Stock Value as the "fair market value per share of the Company's Common Stock as of the date of the determination of the Per Share Stock Value, as set forth in an appraisal obtained by the Company . . . performed by an appraiser reasonably acceptable to the Company and such Shareholder. . . ." The definition further states that "[t]he Per Share Stock Value shall be calculated by the certified public accountant or accounting firm that audited the Company's financial statements for the most recently ended fiscal year of the Company as of the date of determination thereof."

Plaintiff contends the foregoing is ambiguous and unenforceable. We, however, find this issue moot because it is undisputed that there was no audit of the Company for the applicable year, 2008; thus, the second provision of the Shareholders' Agreement that pertains to audited financial statements does not apply to the facts of this case.

Based upon the foregoing and the facts of this case, the applicable definition of Per

Share Stock Value is the "fair market value per share of the Company's Common Stock as of the date of the determination of the Per Share Stock Value, as set forth in an appraisal obtained by the Company . . . *performed by an appraiser reasonably acceptable to the Company and such Shareholder. . . .*" (Emphasis added). Obviously, Mr. Price was acceptable to the Company. Therefore, the dispositive issue for purposes of summary judgement as to this claim is whether the appraiser, Mr. Price, was "reasonably acceptable to the Company *and* [Plaintiff]."

Defendants informed Plaintiff of their intent to exercise the call option in a letter dated February 25, 2009, four days after they obtained an informal valuation from Mr. Price. On that same day, Plaintiff objected to the selection of Mr. Price as the appraiser, not on the basis that he was not a competent accountant or appraiser,[5] but based upon the fact that Mr. Scesa obtained an "informal valuation" prior to selecting Mr. Price as the appraiser and exercising the call option. Plaintiff cited concerns of potential bias and undue influence based upon these preliminary communications.

Generally, the determination of reasonableness is a question of fact for the jury. *See Nat'l Mortg. Co. v. Washington*, 744 S.W.2d 574, 580 (Tenn. Ct. App. 1987) (citing *Smith v. Sloan*, 225 S.W.2d 539 (Tenn. 1949); *Hathaway v. Middle Tennessee Anesthesiology, P.C.*, 724 S.W.2d 355 (Tenn. Ct. App.1986)) ("Whether any kind of behavior conforms to a legal standard of reasonable conduct is a mere fact question for the jury, and not a question of law"). The trial court found that "no reasonable jury could conclude that Plaintiff was reasonable in her objection to Mr. Price as a reasonabl[y] acceptable appraiser as required by the Shareholders' Agreement. We respectfully disagree with this conclusion, believing that a "reasonable jury" could find that Plaintiff's objection to Mr. Price, based on the manner by which Mr. Scesa went about selecting Mr. Price as the appraiser, was unreasonable.

It is important to note that no one has questioned the integrity of Mr. Price. What is at issue is the "show me your cards first" approach implemented by Defendants to select an appraiser who was "acceptable" to Defendants, and whether that approach constitutes a "reasonable" basis upon which Plaintiff may conclude that Mr. Price is not "reasonably acceptable" to her. We believe Mr. Scesa's conduct that preceded the selection of Mr. Price is sufficient to create a genuine dispute of a fact that is material to this issue, which is whether Plaintiff had a reasonable basis upon which to object to Mr. Price as the appraiser of the Per Share Stock Value pursuant to section 6 of the Shareholders' Agreement.

---

[5]Plaintiff also objected to Price because his experience was with individual medical practices and not multi-employee companies. However, Price's qualifications are not at issue on this appeal as both parties agree he is qualified.

Having concluded that a genuine issue of material fact exists concerning this issue, we reverse the trial court's summary dismissal of Plaintiff's breach of contract claim, reinstate the claim, and remand this issue to the trial court for further proceedings.

## II. FALSE LIGHT INVASION OF PRIVACY

Plaintiff contends that the trial court erred in summarily dismissing her claim for false light invasion of privacy against Steven Scesa. Plaintiff alleged that Mr. Scesa made comments to a business associate that Plaintiff was terminated from the Company for taking money. The trial court found that Plaintiff had failed to demonstrate any damages and therefore Scesa was entitled to summary judgment because Scesa demonstrated that Plaintiff could not establish an essential element of her claim, that of damages. We respectfully disagree with this decision because Scesa has not established that Plaintiff cannot prove *at trial* that she sustained the requisite damages. *See Martin*, 271 S.W.3d at 83.

Plaintiff contends the trial court applied an incorrect legal standard in dismissing this claim on a finding that Plaintiff had no damages because there was no evidence in the record of damages to Plaintiff's professional or business reputation. In support of her argument, Plaintiff cites to *West v. Media General Convergence, Inc.*, 53 S.W.3d 640 (Tenn. 2001), wherein our Supreme Court recognized a person's ability to sustain a false light invasion of privacy claim based upon damages in the form of "evidence of injury to standing in the community, humiliation, or emotional distress." *Id.* at 648.

As the moving party, defendant Scesa had the burden to *negate* an essential element of Plaintiff's claims for false light invasion of privacy *or* establish that Plaintiff *cannot prove* an essential element of her claims *at trial*. *See Martin*, 271 S.W.3d at 83 (citing *Hannan*, 270 S.W.3d at 5; *McCarley*, 960 S.W.2d at 588; *Byrd*, 847 S.W.2d at 215 n.5) (emphasis added). He did neither; instead, Mr. Scesa relied upon the now overruled "put up or shut up" procedure of pointing to the record to show that Plaintiff had not introduced evidence of her damages. Mr. Scesa also pointed to a statement made by Plaintiff that her business had not yet suffered. However, as *West* recognizes, damages for false light invasion of privacy may include damage to one's reputation, humiliation, or emotional distress. *West*, 53 S.W.3d at 648. Under the former "put up or shut up" standard for summary judgment, he might have succeeded; however, following *Hannan*, the moving party must do more than point to a mere absence in the record. *Hannan*, 270 S.W.3d at 8-9. That party must either affirmatively negate an essential element of the claim or show that Plaintiff cannot prove an essential element of her claim *at trial*. *Id*. In her complaint, Plaintiff alleged that the statement by Mr. Scesa to a business associate, Brian Zentz, that Plaintiff was terminated for "taking money

-10-

from the company" damaged her professional and business reputation.[6] Mr. Scesa, however, has failed to demonstrate that Plaintiff cannot prove, at trial, that she has sustained injury to her "standing in the community, humiliation, or emotional distress." We, therefore, reverse the summary dismissal of Plaintiff's false light invasion of privacy claim, reinstate the claim, and remand this claim for further proceedings.

III. BREACH OF FIDUCIARY DUTY, DUTY OF LOYALTY, AND DUTY OF GOOD FAITH

Plaintiff also appeals the trial court's summary dismissal of her claims of breach of fiduciary duty, the duty of loyalty, and the duty of good faith. The trial court found that the business decision of the Defendants in terminating the employment of Plaintiff "negated the elements she alleges constitute breach of fiduciary duty, duty of good faith, and duty of loyalty." Additionally, the trial court found that once Defendants shifted the burden to Plaintiff, she failed to put forth evidence to overcome Defendants' business reasons for her termination and also Plaintiff failed to demonstrate any damages resulting from the alleged breaches.

In her complaint, Plaintiff asserted that Defendants breached these duties for a litany of reasons including that they terminated Plaintiff's employment, which she asserts was not in the Company's best interest; that they misused their positions within the Company to gain unfair benefit; that Defendants wasted corporate assets; and that Defendants excluded Plaintiff from decision-making.

In support of the motion to dismiss this claim, Defendants asserted that the decisions of which Plaintiff complained were protected under the business judgment rule. In *Lewis on Behalf of Citizens Sav. Bank & Trust Co. v. Boyd*, 838 S.W.2d 215 (Tenn. Ct. App. 1992), this court discussed the business judgment rule as follows:

> Tennessee's courts have consistently followed a noninterventionist policy with regard to internal corporate matters. They have recognized that directors have broad management discretion. *Chism v. Mid–South Milling Co.,* 762 S.W.2d 552, 556 (Tenn.1988) (discretion in employing or discharging corporate officers); *Wallace v. Lincoln Sav. Bank,* 89 Tenn. 630, 636, 15 S.W. 448, 449–50 (1891). Accordingly, they have declined to substitute their judgment for that of a corporation's board of directors when the board has acted in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes. *French v. Appalachian Elec. Coop.,* 580

---

[6]The record does contain an affidavit from Mr. Zentz that such a statement was made to him by the Defendant, Steven Scesa.

S.W.2d 565, 570 (Tenn. Ct. App.1978); *Range v. Tennessee Burley Tobacco Growers Ass'n,* 41 Tenn. App. 667, 675, 298 S.W.2d 545, 549 (1955), *cert. denied,* 355 U.S. 813, 78 S.Ct. 11, 2 L.Ed.2d 30 (1958).

These decisions squarely align Tennessee with the jurisdictions recognizing and following the "business judgment rule." *Levine v. Smith,* 591 A.2d 194, 197–98 (Del.1991); *Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 926, 393 N.E.2d 994, 999–1000 (1979); 3A W. Fletcher, *Cyclopedia of the Law of Private Corporations* § 1039 (rev. perm. ed. 1986); Dennis J. Block, Stephen A. Radin & James P. Rosenzweig, *The Role of the Business Judgment Rule in Shareholder Litigation at the Turn of the Decade,* 45 Bus.Law. 469, 489–90 (1990) ("Block, Radin & Rosenzweig"). Thus, like other courts following the business judgment rule, we presume that a corporation's directors, when making a business decision, acted on an informed basis, in good faith, and with the honest belief that their decision was in the corporation's best interests. *Spiegel v. Buntrock,* 571 A.2d 767, 774 (Del.1990); *Zapata Corp. v. Maldonado,* 430 A.2d 779, 782 (Del.1981).

*Lewis*, 838 S.W.2d at 220-21.

Plaintiff opposed the motion contending that there are genuine issues of material fact concerning Defendants' undisputed conduct; therefore, the trial court erred in summarily dismissing this claim. In her brief, Plaintiff further argues that her exclusion from participation in the company and denial of a reasonable return on investment are sufficient to establish a claim for oppressive conduct of a minority shareholder.

We are in agreement with the trial court's finding that the actions Plaintiff complains of are covered by the business judgment rule and Plaintiff failed to rebut the presumption that Defendants acted on an informed basis, in good faith and with the belief their decision was in the Company's best interest; therefore, Defendants were authorized to exercise the call option in the Shareholders' Agreement. We, therefore, affirm the summary dismissal of Plaintiff's claims for breach of fiduciary duty, breach of the duty of loyalty, and breach of good faith.

IV. Derivative Claim

Lastly, we address Defendants' argument that the trial court erred in failing to award them attorney's fees pursuant to Tennessee Code Annotated § 48-17-401(d)(2). Plaintiff attempted to bring a derivative shareholder's claim pursuant to Tennessee Code Annotated § 48-17-401. However, Plaintiff failed to comply with the requirements of the statute in

bringing her action; specifically, Plaintiff failed to verify her amended complaint as required by Tennessee Code Annotated § 48-56-401(c). However, Defendants argue that because Plaintiff's intent was to pursue a claim under Tennessee Code Annotated § 48-17-401, they should still be awarded their attorney's fees pursuant to the statute. We respectfully disagree having determined, as the trial court did, that Plaintiff did not properly assert a shareholder's derivative action, and, therefore Tennessee Code Annotated § 48-17-401(d)(2) is inapplicable and Defendants are not entitled to their attorney's fees pursuant to the statute.[7]

## IN CONCLUSION

The judgment of the trial court is reversed in part, affirmed in part, and this matter is remanded with costs of appeal assessed against both parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE

---

[7]Additionally, the statute provides that the Company is entitled to the attorney's fees if the trial court finds that "the proceeding was commenced or maintained without reasonable cause or for an improper purpose," and there is no indication of that in this action. Tenn. Code Ann. § 48-17-401(d)(2).

-13-